OHIO GOVERNMENT RISK MANAGEMENT PLAN, APPELLANT,
*v.* HARRISON ET AL.; KOHLER, APPELLEE.

[Cite as *Ohio Govt. Risk Mgt. Plan v. Harrison,*
115 Ohio St.3d 241, 2007-Ohio-4948.]

(No. 2005–1461—Submitted December 13, 2006—Decided September 27, 2007.)

———

PFEIFER, J.

{¶ 1} Denise Kohler, appellee, filed a federal action against the city of Wapakoneta and David L. Harrison Sr., formerly Wapakoneta's chief of police. Kohler alleged that Harrison had used the department's computer system to display and distribute offensive and pornographic photographs and e-mails, and that he also used hidden electronic devices owned by the department to audio

record female employees, including Kohler, while they were in the police-department restroom. Kohler's amended complaint set forth five counts against Harrison: denial of equal protection by creating a work environment that was hostile to Kohler because of her sex, denial of her constitutional right to privacy, an R.C. 4112.02 sex-discrimination claim, and common-law claims of invasion of privacy and intentional infliction of emotional distress. Kohler named Harrison as an individual and in his official capacity, asserting that Harrison had acted in his official capacity as chief of police and under color of state law.

{¶ 2} At the time of the events alleged in the complaint, the Ohio Government Risk Management Plan ("the Plan"), appellant, provided liability insurance coverage to Wapakoneta, and to Harrison as the chief of police. In June 2004, the Plan filed a declaratory-judgment action in the Auglaize County Court of Common Pleas seeking a determination that it had no duty to provide coverage or a defense to Harrison. The trial court granted summary judgment in the Plan's favor.

{¶ 3} The Court of Appeals for Auglaize County reversed the trial court's judgment. The court of appeals determined that Kohler's claims arose from her employment with the Wapakoneta Police Department while Harrison was chief of police. The court noted that Kohler had alleged that Harrison's actions were taken in the course of his duties and that, although his actions might not have been in furtherance of his official duties, Harrison was able to take those actions only because of his position as chief of police.

{¶ 4} Further, the court stated that the Plan's policy specifically provided that it would defend against a suit for any wrongful act even if the complaint were groundless or false, and it additionally specified that it would defend suits for misfeasance, malfeasance, nonfeasance, civil rights violations, and discrimination. Because some of Kohler's claims fell within the Plan's coverage, the court, viewing the evidence in a light most favorable to Harrison, held that Kohler's underlying federal claims were not indisputably outside the coverage of the policy and, thus, the Plan had a duty to defend Harrison. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 161 Ohio App.3d 726, 2005-Ohio-3235, 831 N.E.2d 1079, ¶ 10.

{¶ 5} This cause is now before the court on a discretionary appeal. We review the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

### Sexual Harassment/Scope of Employment

{¶ 6} In the primary issue on appeal, the Plan asks us to hold that conduct involving sexual harassment and sexually deviant behavior—such as the acts alleged in the underlying complaint—is conduct that is manifestly outside the scope of employment as a matter of law. The Plan maintains that acts of sexual

harassment are outside the scope of employment because they are unrelated and antithetical to the objectives of the employer. The Plan thus argues that when, as here, the liability policy defines an "insured" as any employee "while acting on behalf of or in the interest of" the employer, the employer's insurer has no duty to defend an employee against such claims. We decline to adopt such a broad and absolute rule, for the following reasons.

{¶ 7} First, we rejected exactly this claim under analogous circumstances in *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428. Like Kohler, the plaintiff in *Kerans* raised allegations of workplace sexual harassment by her supervisor. The employer contended that it could not be held liable for the supervisor's intentional acts, since the activities that formed the basis of the complaint took place outside the scope of the supervisor's employment. The employer argued that because it did not hire the supervisor to sexually harass female employees and because the supervisor's actions in no way facilitated the employer's business, the employer could not be held liable for the harm that resulted from the supervisor's egregious behavior. *Kerans*, 61 Ohio St.3d at 490, 575 N.E.2d 428.

{¶ 8} We found, however, that there was a genuine issue of material fact as to whether the supervisor's actions took place within the scope of his employment. Specifically, we noted that federal courts have held that "where an employee is able to sexually harass another employee because of the authority or apparent authority vested in him by the employer, it may be said that the harasser's actions took place within the scope of his employment." *Kerans*, 61 Ohio St.3d at 490, 575 N.E.2d 428. We further noted that in *Shrout v. Black Clawson Co.* (S.D.Ohio 1988), 689 F.Supp. 774, the court had held that when the supervisor's harassment of an employee takes " 'place during work hours, at the office, and was carried out by someone with the authority to hire, fire, promote and discipline the plaintiff,' " it will normally fall within the supervisor's scope of employment. *Kerans* at 490, 575 N.E.2d 428, quoting *Shrout* at 781.

{¶ 9} Second, the Plan argues that two Ohio court of appeals' decisions establish—for purposes of determining the duty to defend—that sexual harassment is conduct that is manifestly outside the scope of employment. We find that neither case supports the broad proposition urged by the Plan.

{¶ 10} The Plan first cites *Oye v. Ohio State Univ.*, Franklin App. No. 02AP–1362, 2003-Ohio-5944, 2003 WL 22511511. The issue in *Oye* was whether a state employee was entitled to personal immunity under R.C. 9.86 against allegations that included claims of hostile-work-environment sexual harassment. R.C. 9.86 provides that "no officer or employee shall be liable in any civil action * * * for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official

responsibilities." The *Oye* court, however, did not decide that acts of sexual harassment were always manifestly outside the scope of employment. Rather, the court noted that the "term 'scope of employment' is an elusive concept * * * [that] 'has never been accurately defined * * * because [whether an act falls within the scope of employment] is a question of fact'" to be determined according to the peculiar facts of each case. *Oye* at ¶ 6, quoting *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 278, 74 O.O.2d 427, 344 N.E.2d 334. That is, *Oye* turned on the specific facts of the case.

{¶ 11} Nevertheless, the Plan argues that *Oye* relied on *Burlington Industries, Inc. v. Ellerth* (1998), 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633, a case in which the United States Supreme Court stated that the "general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." Id. at 757, 118 S.Ct. 2257, 141 L.Ed.2d 633. But *Ellerth* did not hold that all acts of workplace sexual harassment were outside the scope of employment. Rather, the court recognized that when a supervisor engages in sexual harassment with the purpose (however misguided) to serve the employer, the supervisor acts within the scope of employment. Id. at 756–757, 118 S.Ct. 2257, 141 L.Ed.2d 633, citing *Sims v. Montgomery Cty. Comm.* (M.D.Ala.1990), 766 F.Supp. 1052, 1075.

{¶ 12} In a companion case decided the same day as *Ellerth,* the court again recognized that not all acts of sexual harassment by a supervisor fall outside the scope of employment. *Faragher v. Boca Raton* (1998), 524 U.S. 775, 798–799, 118 S.Ct. 2275, 141 L.Ed.2d 662. Indeed, *Faragher* cites numerous cases holding employers vicariously liable for intentional discriminatory acts of their supervisors—including sexual harassment. *Faragher* at 788–794, 118 S.Ct. 2275, 141 L.Ed.2d 662. See also *Durham Life Ins. Co. v. Evans* (C.A.3, 1999), 166 F.3d 139, 150 (noting that *Ellerth* and *Faragher* drew a line between a supervisor's sexually discriminating acts that are in line with the employer's interest and those that have no apparent purpose of serving the employer's interest).

{¶ 13} We also find *Oye* distinguishable from the case before us in that *Oye* did not involve claims of sexual harassment against a supervisor. *Kerans, Ellerth,* and *Faragher* recognized that an employer is more likely to be held liable for the acts of its supervisors than its nonsupervisory employees because a supervisor can take tangible, adverse employment actions against his or her subordinates because of the authority delegated by the employer. *Kerans,* 61 Ohio St.3d at 490–491, 575 N.E.2d 428; *Ellerth,* 524 U.S. at 761–762, 118 S.Ct. 2257, 141 L.Ed.2d 633; and *Faragher,* 524 U.S. at 800–801, 118 S.Ct. 2275, 141 L.Ed.2d 662.

{¶ 14} The second case cited by the Plan, *Crise v. Cleveland,* Cuyahoga App. No. 80984, 2002-Ohio-6229, 2002 WL 31528793, did involve claims of sexual

harassment against a supervisor. The issue in *Crise* was whether the city had a duty to defend the supervisor under R.C. 2744.07(A)(1) against such claims. R.C. 2744.07(A)(1) provides that a political subdivision has a duty to defend municipal employees in civil actions if the employee was acting, or was alleged to have acted, in good faith and not manifestly outside the scope of his employment.

{¶ 15} *Crise* was decided primarily on the second prong of the statute, i.e., that the plaintiff failed to allege in her complaint that the supervisor was acting within the scope of his employment as required by statute. *Crise*, 2002-Ohio-6229, 2002 WL 31528793, at ¶ 12. Admittedly, the *Crise* court did go further, finding that the allegations of sexual harassment in that case were " 'plainly and obviously' outside the scope of [the supervisor's] employment." Id. at ¶ 13. But, as in *Oye*, the court's finding was based on the specific facts of the case. In short, we do not read *Crise* as holding that all acts of workplace sexual harassment are manifestly outside the scope of employment.

{¶ 16} Third, whether an employee is acting within the scope of employment is a question of fact to be decided by the jury. *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d at 278, 74 O.O.2d 427, 344 N.E.2d 334. "Only when reasonable minds can come to but one conclusion does the issue regarding scope of employment become a question of law." *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 330, 587 N.E.2d 825.

{¶ 17} Generally, the determination of whether specific acts fall within an employee's scope of employment will vary from case to case. Yet the Plan would have us hold—as a matter of law—that acts of sexual harassment are always outside the scope of employment. But as the Third Circuit Court of Appeals cogently noted in *Durham Life*, the determination of whether conduct is within the scope of employment or outside the scope of employment necessarily turns on the fact-finder's perception of whether the supervisor acted, or believed himself to have acted, at least in part, in his employer's interests. Id., 166 F.3d at 151, fn. 6. Indeed, it will often be difficult to distinguish purely personal gender-based discrimination, which falls outside the scope of employment, from discrimination directed at an employee and intended by the harasser, at least in part, to serve the employer. Thus, it is "difficult to reconcile intent as the touchstone of 'scope of employment' with *Ellerth's* blunt statement that '[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment.' " Id., quoting *Ellerth*, 524 U.S. at 757, 118 S.Ct. 2257, 141 L.Ed.2d 633.

{¶ 18} Based on the foregoing, we decline to hold that sexual harassment is conduct that is outside the scope of employment as a matter of law.

### Duty to Defend

{¶ 19} An insurer's duty to defend is broader than and distinct from its duty to indemnify. *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1945), 144 Ohio St.

382, 29 O.O. 563, 59 N.E.2d 199, paragraph one of the syllabus; *W. Lyman Case & Co. v. Natl. City Corp.* (1996), 76 Ohio St.3d 345, 347, 667 N.E.2d 978. The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus. The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 179, 9 OBR 463, 459 N.E.2d 555. However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage. *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 113, 30 OBR 424, 507 N.E.2d 1118.

{¶ 20} During the time of Harrison's alleged actions, beginning in June 1997, the Plan provided liability coverage to Wapakoneta. There is no dispute among the parties that the coverage in place on November 17, 1996, under Certificate No. OH1010078–P96, is applicable to this matter.

{¶ 21} Under the Plan's "Public Officials Wrongful Act Liability Coverage" endorsement, the Plan has "the right and duty to defend any suit against the insured alleging a wrongful act covered under this form, even if any of the allegations of the suit are groundless, false or fraudulent." "Wrongful act" is defined by the contract as "any actual or alleged error, misstatement or misleading statement, act or omission or neglect or breach of duty, including misfeasance, malfeasance, nonfeasance, Violation of Civil Rights, Discrimination (unless coverage thereof is prohibited by law), and Improper Service of Process by the 'insured' in their official capacity, individually or collectively, or any matter claimed against them solely by reason of their having served or acted in an official capacity."

{¶ 22} "The issuer of a law-enforcement liability insurance policy has a duty to defend its insured against an action when the complaint contains an allegation of conduct that could arguably be considered covered by the policy." *Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, paragraph one of the syllabus. Kohler sued Harrison individually and in his official capacity. Kohler's complaint raised allegations that Harrison committed civil-rights violations and sex discrimination. In addition, Kohler alleged that Harrison engaged in misfeasance, malfeasance, and nonfeasance. These are the types of claims that the Plan agreed to defend.

{¶ 23} Moreover, the Plan agreed to defend claims against Wapakoneta and its officers that are based on wrongful acts—including allegations that are groundless, false, or fraudulent. The duty to defend is broader when the insurer expressly states that it will defend claims that are groundless, false, or fraudu-

lent. See *Preferred Risk Ins. Co. v. Gill,* 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, paragraph two of the syllabus.

{¶ 24} Furthermore, the definition of "wrongful act" is expanded by the contract in this case to include "*any matter claimed* against [an insured] solely by reason of their having served or acted in an official capacity." (Emphasis added.) Thus, in addition to the Plan's agreement to defend against suits for civil-rights violations and discrimination, the Plan also agreed to defend against "any matter claimed," as long as the plaintiff claims that the insured "served or acted in an official capacity." The allegations in the underlying federal complaint related directly to Harrison's capacity as Wapakoneta's chief of police, and Kohler alleged that Harrison committed wrongful acts while he was acting in his official capacity and under color of state law.

{¶ 25} Nevertheless, the Plan maintains that its policy limits those insured to those persons acting in furtherance of the interest of the named insured, Wapakoneta. The policy does state that it provides coverage to elected or appointed officials and employees "while acting on behalf of or in the interest of" Wapakoneta. And the Plan contends that all the allegations made in Kohler's complaint involve conduct by Harrison that is outside the scope of employment because it did not further Wapakoneta's interests. Thus, the Plan argues that it has no duty to defend Harrison. We disagree.

{¶ 26} First, the Plan overlooks language in the policy indicating that an "insured" is not limited solely to those acting "in the interest of" Wapakoneta. Rather, an insured includes any employee "while acting on behalf of *or* in the interest of" Wapakoneta. (Emphasis added.) The policy separated the phrases "while acting on behalf of" and "in the interest of" with the word "or." The words used in a contract are to be given their plain and ordinary meaning, *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347, and "or" is "a function word indicating an alternative between different or unlike things," *Pizza v. Sunset Fireworks Co., Inc.* (1986), 25 Ohio St.3d 1, 4–5, 25 OBR 1, 494 N.E.2d 1115. That is, the policy's use of the disjunctive "or" indicates that the two phrases were not intended to have the same meaning and that if an employee's actions satisfy either one, then he is an insured.

{¶ 27} Thus, while this language could certainly be construed as limiting an insured to one acting within the scope of employment, it could also be construed to include an officer who acted in his official capacity or an officer who is simply on duty. This latter construction is bolstered by the policy's use of the phrase "within the scope of his duties" to limit the definition of an insured in the Comprehensive General Liability Section of the policy. Had the Plan intended to limit the definition of an insured under the Wrongful Act endorsement to those

acting within the scope of their duties, it could have simply employed that language as it did in other sections of the policy.

{¶ 28} If provisions are susceptible of more than one interpretation, they "will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. Moreover, "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096. Because the limiting phrase "while acting on behalf of or in the interest of" is susceptible of more than one interpretation, it must be construed against the Plan.

{¶ 29} But even if we construed this language in the Plan's favor, there would still be a genuine issue of fact regarding whether Harrison had been acting within the scope of employment during the alleged conduct. When the trial court granted summary judgment in favor of the Plan, Harrison's intent in committing the alleged acts had not been determined. Hence, it was also undetermined whether his acts were connected to his status as chief of police or to his supervisory role over Kohler.

{¶ 30} For example, Kohler alleged in her complaint that Harrison used hidden electronic devices to record Kohler's private activities in the police-department restroom. Whether Harrison had acted in his official capacity or with purely private motives was a question that was not resolved until evidence was submitted in Kohler's underlying action. See *Kohler v. Wapakoneta* (N.D.Ohio 2005), 381 F.Supp.2d 692, 710–711 (finding that no evidence was submitted indicating that Harrison had acted in his official capacity or under color of state law when he secretly recorded Kohler).

### Conclusion

{¶ 31} We find that Kohler's claims are not clearly and indisputably outside of the contracted policy coverage. Therefore, the Plan has a duty to defend Harrison against all claims in Kohler's federal lawsuit.

*Judgment affirmed.*

MOYER, C.J., and SADLER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

LISA L. SADLER, J., of the Tenth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

Shumaker, Loop & Kendrick, L.L.P., and Michael G. Sanderson, for appellant.

Hunter, Carnahan, Shoub & Byard, Grant D. Shoub, and Robert M. Cody, for appellee.