OPINION *Page 2 
{¶ 1} The defendant-appellant, Charles Dean Hartley, appeals the judgment of the Marion County Common Pleas Court granting summary judgment on his counterclaim to the plaintiffs-appellees, Douglas Hull, Brenda Armstrong, and Daniel Hull. On appeal, Appellant contends the trial court erred because he is now barred from presenting the case to a jury. For the reasons set forth herein, the judgment of the trial court is affirmed.
 {¶ 2} On August 20, 2007, the appellees filed a complaint in the Marion County Municipal Court seeking to evict Hartley. On August 30, 2007, Appellant filed an answer and a counterclaim alleging one count of unjust enrichment based on expenses he paid to maintain and improve the real property and funeral expenses for Janet Hull, Appellees' deceased mother with whom he had previously cohabited. Because the damages Appellant requested exceeded the jurisdictional limits of the municipal court, the case was certified to the Marion County Common Pleas Court on September 14, 2007. The appellees voluntarily dismissed their complaint.
 {¶ 3} The appellees were granted leave to seek summary judgment on Appellant's counterclaim, and on June 27, 2008, they filed their motion, supported by Appellant's deposition testimony. Appellant filed a memorandum in response, and the appellees filed a reply. On September 9, 2008, the trial court filed its *Page 3 
judgment entry granting summary judgment to Appellees. Appellant challenges the judgment of the trial court, raising one assignment of error for our review.
 ASSIGNMENT OF ERROR The trial court erred in granting summary judgment to plaintiff [sic]on defendant's claim for unjust enrichment and quantum meruit.
 {¶ 4} An appellate court reviews a trial court's summary judgment decision de novo, independently and without deference to the trial court's decision. Ohio Govt. Risk Mgt. Plan v. Harrison,115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶ 5, citing Comer v.Risko, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 8. Summary judgment is appropriate only "when the requirements of Civ. R. 56(C) are met." Adkins v. Chief Supermarket, 3d Dist. No. 11-06-07,2007-Ohio-772, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ. R. 56(C); Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679,1995-Ohio-286, 653 N.E.2d 1196, at paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *." Id., at ¶ 8, citingJacobs *Page 4 v. Racevskis (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant. Jacobs, at 7.
 {¶ 5} The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 116,526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ. R. 56(C). Id., at 115, citing Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, citingHamlin v. McAlpin Co. (1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781;Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *." Dresher, at 294.
 {¶ 6} The appellees' motion for summary judgment sets forth the following facts, which are not disputed by Appellant.
 Mr. Hartley first moved into the residence * * * on June 10, 1970. See, Hartley deposition at 5-7. Janet Hull purchased and owned the property in her own name, but Mr. Hartley testified that he assisted with the down payment and mortgage payments. *Page 5 Id. at 7-8. Mr. Hartley resided at the property from June 10, 1970 through September 13, 2007.
 Throughout the time that he resided at the premises, Mr. Hartley claims to have made various improvements and performed certain maintenance. See generally, Counterclaim. Mr. Hartley testified that nearly all of this work was completed while Janet Hull was alive and the two were residing together. See, Hartley deposition at 9. As will be discussed in greater detail below, most of these improvements were made in the 1980s and 1990s, long before Janet Hull passed away.
 When Janet Hull became terminally ill, she created a survivorship deed whereby her three (3) children, the plaintiffs in this case, were to take title to the subject property upon her death. See, Hartley deposition at 36. Mr. Hartley was aware that Janet Hull made this arrangement with her children. Id. Mr. Hartley also testified that Janet Hull promised him that he could remain in the home for as long as he desired following her death. Id. at 35-36. He states that Janet Hull instructed her children accordingly. Id.
 Mr. Hartley admits that, when he performed maintenance or made improvements to the home, Janet Hull never promised him reimbursement. Id. at 30. Rather, Janet Hull and Mr. Hartley simply agreed upon what needed to be done around the home. Id. When Mr. Hartley made the improvements in question, there was never any notification to the Plaintiffs as to the work being done and the cost involved. Id. The same is true for the work performed at the property following Janet Hull's death, with the exception of a single roofing repair that required an insurance claim. Id. At no time following Janet Hull's death did any of the Plaintiffs promise to compensate Mr. Hartley for the work that he performed. Id. at 31.
 Mr. Hartley was not made a beneficiary to Janet Hull's estate. Id. at 34. He never made a claim against her estate for reimbursement for the improvements and work done at the property. Id. at 32. *Page 6 
 Mr. Hartley testified that, while he resided in the home for over nine (9) years after Janet Hull's death, he did not pay any rent. Id. at 28-29. He testified that he signed a Lease Agreement, reciting one dollar per month or one dollar per year as rent. Id. Mr. Hartley testified that he did pay the property taxes for several years following Janet Hulls' death, but was unable to continue making these payments in the year 2003, when he suffered an injury that prevented him from working. Id. at 29. At that point, Plaintiff Brenda Armstrong began paying the property taxes. Id. at 30-31.
 Mr. Hartley's Counterclaim outlines numerous repairs and/or maintenance for which he seeks reimbursement. See, Counterclaim at ¶¶ 2 and 3. Following is a list of the repairs or improvements that were made before Janet Hull's death, with citation to Mr. Hartley's testimony indicating the time of the repair:

Item Claimed Value Date Hartley
 Deposition
Construction of 30' x $10,000.00 August 1987 Page 10
28' Garage
Finishing Garage $5,000.00 August 1987 Pages 11-12
Interior
Furnace replacement $3,000.00 1980 Page 12
Blacktop Parking Area $1,500.00 1987 Page 13
Blacktop Sealant $600.00 Prior to 1987 Page 13
Replacement of Windows $7,000.00 1996 or 1997 Page 14
Front Porch Roof
Replacement Repairs $1,500.00 1980s Page 15
Kitchen Renovations $5,000.00 Mid 1980s Pages 15-16
Bathroom $131.22 Late 1997- Page 17
Maintenance Repairs Early 1998
Garage Attic Insulation $131.59 1987 Pages 17-18
Sewer Drain Repairs $150.00 Late 1997 or Page 18
 early 1998
Split Rail Fence $1,000.00 Early 1980s Page 25
 *Page 7 
 The total value claimed for these items completed prior to JanetHull's death is $35,012. In addition, the following is a list of repairsand maintenance that occurred either after Janet Hull's death or at someother undetermined date, and alleged by Mr. Hartley to have occurredafter Janet Hull's death:
Item Claimed Value Date Hartley
 Deposition
Property Taxes $7,905.84 June 1998 Page 16
 through June
 2004
Basement Repairs $535.67 After June Pages 18-20
 1998
Furnace Repairs $226.30 Undetermined Page 21
Carpet Cleaning $174.60 2004 Pages 22-23
Lawn Care $320.58 Annually Page 23
 following Janet
 Hull's death
Burial Expenses for $756.80 1998 Pages 23-24
Janet Hull
Garage Roofing $1,400.00 After Janet Pages 24-25
 Hull's death

 The total value claimed for these items completed after Janet Hull's death is $11,319.79.
(Mot. for Summ. J., Jun. 27, 2008, at 3-6).
 {¶ 7} Appellees argued that those expenses incurred prior to Janet's death did not constitute a benefit to them, and therefore, Appellant was unable to prove the first element of unjust enrichment. As to the expenses Appellant paid after Janet's death, the appellees argued that the money benefitted Appellant, not them. The appellees alleged that Appellant lived in the home for approximately ten years *Page 8 
after Janet's death without paying rent, and he paid the property taxes for approximately half of the time he lived there. Appellees also argued that they had no knowledge of Appellant's expenditures; that R.C. 2117.06, establishing a statute of limitations in which to claim expenses against an estate, barred a portion of the damages sought by Appellant; and that Appellant did not have standing to recover $1,400 for roofing repairs because the money was owed to a third-party who happened to be Appellant's son.
 {¶ 8} In his response to Appellee's motion, Appellant produced no evidence to create a genuine issue of material fact. The essence of Appellant's memorandum was that Appellees were not entitled to judgment as a matter of law, though Appellant cited minimal if any law to support his various arguments.
 Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another," Hummel v. Hummel (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923, while restitution is the "common-law remedy designed to prevent one from retaining property to which he is not justly entitled," Keco Industries, Inc. v. Cincinnati Suburban Bell Tel. Co. (1957), 166 Ohio St. 254, 256, 2 O.O.2d 85, 141 N.E.2d 465. To establish a claim for restitution, therefore, a party must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (`unjust enrichment')." Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298.
 As this court has stated, the purpose of such claims "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the *Page 9 defendant." Hughes v. Oberholtzer (1954), 162 Ohio St. 330, 335, 55 O.O. 199, 123 N.E.2d 393.
Johnson v. Microsoft Corp., 106 Ohio St.3d 278, 2005-Ohio-4985,834 N.E.2d 791, at ¶ 20-21.
 {¶ 9} We agree with Appellees that Appellant's expenditures prior to Janet's death were not a benefit to them. The general rule is that "third-persons, even if benefitted by the work, cannot be sued on an implied contract or on unjust enrichment to pay for the benefit, because an implied contract does not arise against the one benefitted by virtue of a special contract with other persons." Nationwide Heating Cooling,Inc. v. K C Constr. and Frankie J's, Inc. (Sep. 10, 1987), 10th Dist. No. 87AP-129, citing 66 American Jurisprudence 2d, Restitution, Section 60. Exceptions to that general rule do exist; however, in those cases, there is an underlying contractual relationship between the party receiving the benefit and the party who contracted for the benefit. In Kazmier v. Thom (1978), 63 Ohio App.2d 29,408 N.E.2d 694, a lease agreement required the lessee to install a chainlink fence, and the lessee contracted with the plaintiff to complete the work. When the lessee failed to pay, the plaintiff sued the lessee and the lessor. The court denied summary judgment finding genuine issues of material fact as to whether the lessor held himself out as a partner of the lessee. An unjust enrichment claim was also allowed against a landlord where a tenant, who was obligated to pay for repairs to broken windows on the leased property failed to pay *Page 10 
the contractor who completed the repairs. Andy's Glass Shops v. LeelanauRealty (1977), 50 Ohio App.2d 355, 363 N.E.2d 601. See also GuardianTechnology, Inc. v. Chelm Prop., Inc., 8th Dist. No. 80166, 2002-Ohio-4893.
 {¶ 10} The circumstances of this case are distinguished from the above referenced cases because there was no underlying contract between Appellant and Appellee prior to Janet's death. While Janet was alive and Appellant cohabited with her, the money spent by Appellant benefited both him and Janet. Until Janet executed the survivorship deed, none of the Appellees had any interest in the real property. Furthermore, the facts are undisputed that Appellees had no notice of any expenditures made by Appellant prior to Janet's death. (Hartley, Charles Dean, Dep., Jun. 27, at 30). Appellant has produced no evidence to create a genuine issue of material fact as to either of these two elements, nor has he cited any case law in support of his arguments. As such, Appellees are entitled to summary judgment on Appellant's unjust enrichment claim insofar as Appellant seeks damages for expenditures made prior to Janet's death.
 {¶ 11} Appellant also made expenditures after Janet's death as he continued to reside in the home. As to the money Appellant spent on the real property after Janet's death, there are no genuine issues of material fact that Appellees did not know about the expenditures. (Id.). The crux of Appellees' argument is that their retention of any benefit conferred upon them by Appellant was not unjust. *Page 11 
Appellees allowed Appellant to live in the property for approximately ten years after Janet's death. The facts are undisputed that Appellant paid no rent. (Id., at 29). The facts are undisputed that Appellant paid property taxes between 1998 and 2003, though he continued to live in the home after 2003. (Id.). The record is devoid of evidence establishing the party responsible for maintenance of the property. Since there are no genuine issues of fact to show that Appellees' retention of any benefit provided to them by Appellant's expenditures was unjust, summary judgment is appropriate.
 {¶ 12} As to the "grave service" paid by Appellant in 1998, summary judgment in favor of the appellees is appropriate. Burial expenses incurred during Janet's funeral are proper to charge as expenditures of the estate. R.C. 2117.06(B) provides that subject to certain exceptions, all claims against an estate must be made within six months of the decedent's death. The facts are undisputed that Appellant did not request repayment as a creditor of the estate. (Hartley, Dep., at 32).
 {¶ 13} Finally, Appellant has produced no facts to dispute Appellees' assertion that his son was the real party in interest on any outstanding balance for the repairs to the garage roof following Janet's death. In any litigation, the plaintiff must have standing. "The requirement of standing ensures that the party challenging an order has a `personal stake in the outcome of the controversy.'" *Page 12 Ahrns v. SBA Communications Corp., 3d Dist. No. 2-01-13, 2001-Ohio-2284, at *2, quoting Middletown v. Ferguson (1986), 25 Ohio St.3d 71, 75,495 N.E.2d 380. To have standing, the plaintiff must "demonstrate aninjury in fact, which requires a showing that the party has suffered or will suffer a specific injury." (Emphasis sic). Id., citing In re Estateof York (1999), 133 Ohio App.3d 234, 241, 727 N.E.2d 607, citingEng. Technicians Assn. v. Ohio Dept. of Transp. (1991),72 Ohio App.3d 106, 110-111, 593 N.E.2d 472.
 {¶ 14} Appellant has failed to produce evidence to demonstrate any genuine issues of material fact; Appellees are entitled to judgment as a matter of law; and reasonable minds could come to but one conclusion, which is adverse to Appellant. Summary judgment in favor of Appellees is appropriate, and the assignment of error is overruled.
 {¶ 15} The judgment of the Marion County Common Pleas Court is affirmed.
Judgment Affirmed
 SHAW, J., concurs.
 ROGERS J., concurs in Judgment Only. *Page 1