[Cite as *Carter v. Gerbec*, 2016-Ohio-4666.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

GERALDINE M. CARTER, et al.

    Appellant

    v.

SUSAN GERBEC, et al.

    Appellee

C.A. No.     27712

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2012 12 6845

DECISION AND JOURNAL ENTRY

Dated: June 29, 2016

WHITMORE, Judge.

{¶1} Appellants, Geraldine Carter and Geraldine Carter, LLC (collectively, "Carter"), appeal from the trial court's grant of summary judgment to Appellee, Coldwell Banker Hunter Realty ("CBH Realty"). We affirm.

I

{¶2} Carter fell ill in 2008 and required assistance with rental properties she owned in the Akron, Ohio area. Carter entered into property management agreements in April, 2008 with S&C Property Management Service, LLC ("S&C"), a property management business owned by Susan Gerbec. Under the agreements, S&C agreed to act as the exclusive agent to rent, lease, operate, control, and manage Carter's rental properties.

{¶3} In addition to running S&C and managing Carter's properties, Gerbec sold real estate as a licensed agent with CBH Realty. Prior to joining CBH Realty, and prior to entering into the property management agreements with Carter, Gerbec was a real estate agent with

Kelley Realty. Mark Kelley was the principal at Kelley Realty and held the agency's broker's license.[1] At Kelley Realty, Gerbec sold real estate and managed property on behalf of third party owners.

{¶4} Kelley Realty merged with CBH Realty in late 2007. Kelley and Gerbec transferred their real estate licenses to CBH Realty. They moved their real estate sales practice to the CBH Realty Portage Lakes office. Kelley became the licensed broker at that CBH Realty office. Gerbec moved her property management business to the same office building. The building was owned by Barry Shaffer, a CBH Realty real estate sales agent and manager of the Portage Lakes office. Gerbec's property management business was located in a suite separate from the CBH Realty office and had a separate entrance.

{¶5} At or close to the time of the merger with CBH Realty, Gerbec purchased Kelley Realty's property management business. Kelley kept his former property management files in his office at CBH Realty, and Gerbec would access them in Kelley's office as needed. Kelley referred Carter to Gerbec for property management services after Carter contacted him. Other CBH Realty agents referred property management business to Gerbec.

{¶6} Gerbec signed an agreement with CBH Realty that specifically prohibited her from conducting property management activities on behalf and in the name of CBH Realty. The agreement specified that "[p]roperty management [could] not be done by and in the name of [CBH Realty]." Under the agreement, CBH Realty excluded "property management" from activities for which it would provide a legal defense to Gerbec in the event of a claim against her. Shaffer testified by affidavit that Gerbec was prohibited from conducting property management

---

[1] Ohio law requires a real estate agent to be licensed under a licensed broker. *See* R.C. 4735.21.

activities on behalf of CBH Realty. CBH Realty charged Gerbec a fee to include that she was a property management specialist in her biographical information on the CBH Realty website.

{¶7}   Gerbec testified in her deposition that S&C, her property management company, was not affiliated with CBH Realty in any way. Gerbec testified that she did not execute the property management agreements with Carter in her capacity as a representative of CBH Realty. Carter and S&C are the only parties to the contracts for the management of Carter's rental properties. CBH Realty is not a party to the agreements. Carter testified that she understood that the property management agreements were with S&C. Gerbec never represented to Carter that she was affiliated with CBH Realty or that CBH Realty authorized her to conduct property management activities on its behalf. Carter testified that she was not aware that Gerbec was affiliated with CBH Realty. Carter did not write any checks to CBH Realty or receive any payments from CBH Realty. She never received any phone calls or written correspondence from CBH Realty. CBH Realty had no contact or communication with Carter. Moreover, CBH Realty did not receive any compensation from the property management agreements. CBH Realty did not charge Gerbec a fee or commission for her property management activities.

{¶8}   The business relationship between Carter and S&C began to sour in August, 2012. That month Carter did not receive the usual reporting from Gerbec detailing the month's activities. This, combined with a lack of communication from Gerbec, prompted Carter to visit her rental properties. Carter claims that she was denied access to one of her properties. Soon after, Carter brought on Lolita Adair, a friend and real estate broker, to help manage the properties. Around this time Carter allegedly discovered that Gerbec and S&C were in breach of the property management agreements. Carter fired Gerbec and S&C in October, 2012. This lawsuit followed.

{¶9} Carter brought a complaint against Gerbec, S&C, and CBH Realty, among others. Carter alleged that the defendants breached the property management agreements, were unjustly enriched, and also committed various torts, including: (1) fraud; (2) conversion; (3) negligence; (4) breach of fiduciary duty; (5) negligence per se; and (6) civil conspiracy.

{¶10} CBH Realty filed a motion for summary judgment. The trial court granted the motion in March, 2014. Carter settled her claims with the remaining parties during mediation in April, 2014, but failed to submit a dismissal entry to the trial court. Thus, a final judgment was not entered, and the case was still pending in the trial court when in November, 2014 Carter filed a motion to reconsider the grant of summary judgment to CBH Realty. The trial court denied the motion to reconsider.

{¶11} Carter now appeals. She raises two assignments of error for our review.

II.

Assignment of Error Number One

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE, [CBH REALTY].

{¶12} In Carter's first assignment of error, Carter argues that the trial court erred when it granted summary judgment to CBH Realty on the issue of respondeat superior liability. We disagree.

{¶13} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C).

{¶14} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of the motion. *Id.* at 292-293. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.* at 293. An appellate court reviewing a grant of summary judgment "'review[s] the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion.'" *Dunigan v. State Farm Mut. Auto Ins. Co.*, 9th Dist. Lorain No. 03CA008283, 2003-Ohio-6454, ¶ 9, quoting *Am. Energy Servs., Inc. v. Lekan*, 75 Ohio App.3d 205, 208 (5th Dist.1992).

{¶15} As an initial matter, we note that Carter appeals only the trial court's determination of summary judgment based on respondeat superior liability for Gerbec's alleged actions. Carter's appellate brief and reply brief do not address the award of summary judgment on the contract or unjust enrichment claims, or on claims that CBH Realty was liable in tort for its direct actions. We will confine our review accordingly. *See State v. Rodriguez*, 9th Dist. Summit No. 26858, 2014-Ohio-911, ¶ 15.

{¶16} "The respondeat superior doctrine makes an employer or principal vicariously liable for the torts of its employees or agents." *Auer v. Paliath*, 140 Ohio St.3d 276, 2014-Ohio-3632, ¶ 13, citing *Clark v. Southview Hosp. & Family Health Ctr.,* 68 Ohio St.3d 435, 438 (1994). "It is well-established that in order for an employer to be liable under the doctrine of

respondeat superior, the tort of the employee must be committed within the scope of employment." *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (1991).[2]

**{¶17}** Carter argues that "scope of employment" in this matter is a question of fact and precluded summary judgment. Carter bases this assertion on the decision of the Supreme Court of Ohio in *Auer*, a case that was decided after the trial court awarded summary judgment to CBH Realty.

**{¶18}** In *Auer*, a purchaser of rental properties filed suit against a real estate sales person and real estate broker, alleging that the sales person committed fraud in the sale of the properties to her, and in the management and rehabilitation of those properties. *Auer* at ¶ 5-7. Specifically, the purchaser alleged that the sales agent "had fraudulently induced her to purchase the properties by misrepresenting their worth and their capacity to generate rental income." *Id.* at ¶ 7. The sales agent paid her broker a 30 percent commission on her earnings from any real estate transaction. *Id.* at ¶ 2.

**{¶19}** At trial, the purchaser pursued her case against the broker solely on the basis of respondeat superior liability. *Id.* at ¶ 8. The jury found that the agent had fraudulently induced the purchaser to purchase properties, and that the broker was vicariously liable for the fraud. *Id.* at ¶ 9.

**{¶20}** The broker appealed. *Id.* at 10. The court of appeals determined that any error in the form of an allegedly erroneous jury instruction was harmless, because the scope of agency for a real estate broker was a matter of law that the jury did not need to address. *Id.*, citing *Auer v. Paliath*, 2d Dist. Montgomery No. 25158, 2013-Ohio-391, ¶ 46-52.

---

[2] Although CBH Realty recognizes that the case law applicable in this appeal addresses vicarious liability in terms of scope of employment, CBH Realty maintains that Gerbec was an independent contractor and not an employee of CBH Realty.

{¶21} Specifically, the appellate court decided that R.C. 4735.21 already establishes scope of agency for real estate brokers as a matter of law. *Auer*, 240 Ohio St.3d 276, 2014-Ohio-3632 at ¶ 18. R.C. 4735.21 provides that "[n]o real estate salesperson * * * shall collect any money in connection with any real estate * * * transaction, * ** except in the name of and with the consent of the licensed real estate broker * * *." Based on the language of the statute, the court of appeals concluded:

> Under R.C. 4735.21, a real estate salesperson cannot complete a real estate transaction outside of his or her association with a licensed real estate broker. As a result, when a real estate salesperson acts in the name of a real estate broker in connection with the type of real estate transaction for which he or she was hired and the broker collects a commission for the transaction, the salesperson's actions in connection with that real estate transaction are within the scope of the salesperson's employment, as a matter of law.

*Auer*, 40 Ohio St.3d 276, 2014-Ohio-3632 at ¶ 19, quoting *Auer*, 2013-Ohio-391 at ¶ 46. The court of appeals held that the agent was working within her agency as a matter of law when she committed her fraud because: (1) the agent worked as a real estate salesperson for the broker; (2) the agent assisted the purchaser in purchasing properties; and (3) the agent gave the broker commissions from the sales. *Auer*, 140 Ohio St.3d 276, 2014-Ohio-3632 at ¶ 19.

{¶22} The Supreme Court of Ohio reversed the appellate court. In so doing, the Court rejected a "bright-line rule" that "a broker is always liable as a matter of law for the tortious conduct of rogue agents whenever the broker receives a portion of the agent's sales commission." *Id.* at ¶ 20. The Court explained that, because the "scope-of-agency determination necessarily turns upon a multitude of considerations and fact-specific inquiries that R.C. 4735.21 does not address[,]" the scope of the agent's employment "'is a question of fact to be decided by

the jury.'" *Id.* at ¶ 20, quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 330 (1992), citing *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271 (1976).

{¶23} Seizing upon the Supreme Court's determination in *Auer* that a real estate agent's scope of employment under a broker ordinarily is a question of fact, Carter argues that a question of fact must bar summary judgment here, where CBH Realty held Gerbec's real estate license. Contrary to Carter's argument, *Auer* does not compel the same result in the case at bar.

{¶24} Despite the Supreme Court's determination in *Auer* that a real estate agent's scope of employment cannot be defined by statute and therefore generally remains a jury question, the Court did not hold that whether a particular action falls within the scope of agency may never be decided on a motion for summary judgment. Indeed, the Court did not suggest that it intended to remove the scope of agency question from typical summary judgment practice. In other words, when a broker moves for summary judgment on a vicarious liability claim on the basis that there is no evidence that the agent's tortious conduct was within the scope of the agency relationship, the motion is still subject to the provisions of Civ.R. 56 and the burden-shifting procedure outlined in *Dresher*. Thus, to preclude summary judgment, there must be a fact question pertaining to the scope of agency that is a "genuine issue [of] material fact" that would prevent judgment as a matter of law. *Temple*, 50 Ohio St.2d at 327, citing Civ.R. 56(C). Once a broker moving for summary judgment on vicarious liability satisfies the initial burden to support the summary judgment motion with evidence under Civ.R. 56(C), the aggrieved real estate client must "[offer] specific facts showing that there is a genuine issue for trial." *See Dresher,* 75 Ohio St.3d at 293.

{¶25} Indeed, the *Auer* Court's reliance on its previous decision in *Osborne* supports a conclusion that the Court did not intend to alter the typical summary judgment requirements by

declaring a bright-line rule that vicarious liability claims must always go to a jury in the context of a broker-agent relationship, even when there is no genuine issue of material fact as to the broker's vicarious liability. In *Osborne*, the Supreme Court recognized, as it did in *Auer*, that scope of employment generally is a question of fact. *Osborne*, 63 Ohio St.3d at 330. However, the Court explained that "scope of employment becomes a question of law" when "reasonable minds can come to but one conclusion * * * regarding scope of employment." *Id.*

{¶26} Relying on *Byrd*, another of the Supreme Court's prior decisions, the *Auer* Court specified the type of evidence necessary to establish that a tortious act was committed within the scope of employment. When (as here) an intentional tort is alleged, a determination that the conduct was within the scope of employment requires evidence that the employee's conduct "'giving rise to the tort'" was "'calculated to facilitate or promote the business for which the servant was employed * * *.'" *Auer*, 140 Ohio St.3d 276, 2014-Ohio-3632 at ¶ 22, quoting *Byrd*, 57 Ohio St.3d at 58. "[A]n employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd* at 59. "[I]f an employee's actions are self-serving or have no relationship to the employer's business, then the conduct is 'manifestly outside the scope of employment' * * *." *Theobald v. University of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, ¶ 28, quoting R.C. 9.86.

{¶27} Here, CBH Realty presented evidence that Gerbec did not intend for her property management activities for Carter to "facilitate or promote" CBH Realty's real estate business. *See Byrd* at 59. Gerbec signed an agreement with CBH Realty that she would not perform property management functions on behalf of, or in the name of, CBH Realty. She testified that S&C was not affiliated with CBH Realty in any way. Gerbec did not hold herself out to Carter as a CBH Realty representative. Carter testified that she was not even aware that Gerbec was

affiliated with CBH Realty. Gerbec executed the property management agreements as S&C. Carter understood that she was entering into agreements with S&C. CBH Realty was not a party to the agreements. Gerbec testified that she did not execute the agreements as the representative of CBH Realty.

{¶28} In contrast to the situation in *Auer*, there is no countervailing evidence in this case that would create a genuine issue of material fact that Gerbec "'acted, or believed [herself] to have acted, at least in part, in [CBH Realty's] interest.'" *See Auer* at ¶ 22, quoting *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, ¶ 17. It is undisputed that, unlike the real estate agent in *Auer*¸ Gerbec did not hold herself out to be an agent of her broker in any capacity when she entered into the property management agreements or when she engaged in the alleged tortious activity.[3] It is also undisputed that Gerbec, unlike the agent in *Auer*, did not pay a commission or royalty to CBH Realty based on her fees as a property manager. Moreover, none of Carter's allegations of misconduct demonstrate an intended or actual benefit to CBH Realty. At the time of summary judgment, Carter's allegations of misconduct included:

> (a)     "[d]uplicate payments" made to another defendant for work on the property;
>
> (b)     "[f]abricat[ed] invoices from subcontractors * * * to justify payments inputted into the check register";
>
> (c)     "[a]llowing tenants to stay in certain units 'off the books'";
>
> (d)     "[f]orging Dr. Carter's name on Section 8 documents"; and

---

[3] It appears that the real estate agent in *Auer* sold properties to the plaintiff purchaser in the name of her broker, but also performed services for the purchaser under the auspices of the agent's personal property rehabilitation and management companies. The purchaser's lawsuit alleged, among other things, that the agent had "fraudulently induced her to purchase the properties" when acting as a sales agent for her broker. *Auer,* 140 Ohio St.3d 276, 2014-Ohio-3632 at ¶ 7. Here, there are no allegations that Gerbec sold Carter properties in Gerbec's capacity as a sales agent for and in the name of CBH Realty, or that Gerbec committed tortious conduct in any role other than as a property manager.

(e)     "[a]ppliances disappearing".

Carter does not explain how Gerbec's alleged tortious conduct could reasonably be construed as benefitting CBH Realty or as anything other than self-serving acts that do not give rise to vicarious liability.  *See Auer*, 140 Ohio St.3d 276, 2014-Ohio-3632 at ¶ 22; *Byrd*, 57 Ohio St.3d at 58-59.

**{¶29}**  Nonetheless, Carter argues that summary judgment is inappropriate in light of evidence that Gerbec: (1) had connections to CBH Realty; (2) had her property management business in the same office as CBH Realty; (3) purchased Kelley's former property management business; (4) received property management referrals from CBH Realty, whose broker and agents knew that she had a property management business; (5) had reasons for not paying a commission to CBH Realty, and (6) paid for the ability to advertise her property management expertise on CBH Realty's website.  Carter essentially contends that the cumulative weight of these facts signifies that there must have been some intended or actual benefit to CBH Realty.  Carter's argument is untenable because Carter does not articulate what that intended benefit was or provide evidence that a benefit was in fact conferred upon the broker.

**{¶30}**  Moreover, the possibility that Gerbec's property management business was facilitated by CBH Realty's referrals and advertisement of Gerbec's property management expertise on its website does not show an intent on behalf of Gerbec to benefit CBH Realty.  In this scenario, Gerbec is the beneficiary, not CBH Realty.  Therefore, the possibility that Gerbec benefitted from an association with CBH Realty is not enough to establish a question of fact regarding CBH Realty's vicarious liability.  *See Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio- 1198, ¶ 58 (it is not enough to establish scope of agency that the agent's position within the principal's business simply aided her in committing the tort").

**{¶31}** Carter's argument further fails to the extent that she intends to imply that allowing Gerbec to advertise a property management specialty on CBH Realty's website must have facilitated CBH Realty's business development because it would have appealed to clients of the CBH Realty real estate sales practice. There is no specific evidence on the record to support such a contention.[4]

**{¶32}** Carter further argues that a question of fact exists as to Gerbec's scope of employment because Ohio law requires that a real estate agent must be supervised by a real estate broker. *See* R.C. 4735.21. However, vicarious liability for a real estate broker's failure to supervise an agent was expressly rejected by the *Auer* court. *Auer*, 140 Ohio St.3d 276, 2014-Ohio-3632 at ¶ 27. As in *Auer*, the only claim that Carter asserts on appeal is for vicarious liability, not supervisory liability. *See id.* "Vicarious liability by its very terms attaches to the principal through the agent's actions, not through the principal's own actions." *Id.*, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 20-22. On this basis, the *Auer* court reasoned that a broker's direct conduct in failing to supervise an agent is irrelevant to a vicarious liability action. *Auer* at ¶ 27.

**{¶33}** Further, the *Auer* Court specifically rejected that R.C. 4735.21 puts any act in connection with a real estate transaction within the scope of the agent's employment simply because the agent must work under a broker. *Id.* at 24. "R.C. 4735.21 simply does not reach that far." *Id.* Rather, the salient question for summary judgment purposes is whether the agent "acted, or believed [herself] to have acted, at least in part, in [her broker's] interest." *Auer* at ¶

---

[4] There is no evidence on the record that Carter ever saw Gerbec's biographical information on the CBH Realty website. Carter testified that she was not aware that Gerbec was associated with CBH Realty.

22, quoting *Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948 at ¶ 17. We have answered that question in the negative.

**{¶34}** We find that, although scope of agency typically is a jury question, the Supreme Court of Ohio has not carved out an exception to summary judgment practice under Civ.R. 56 exclusively for vicarious liability claims. Indeed, in the real estate context, that a particular act does not fall within the scope of agency may be decided on summary judgment when reasonable minds can only conclude that the agent's actions were self-interested and without any intended or actual benefit to the broker. *See Osborne¸* 63 Ohio St.3d at 330. When none of the specific facts on record demonstrate that the agent's actions were intended to or did facilitate or promote the broker's business, there is no genuine issue of material fact for a jury to decide. Absent a genuine issue of material fact, reasonable minds can only conclude that the agent's actions were outside of the scope of employment, and that the broker is not vicariously liable for those actions. An award of summary judgment to the broker is appropriate under these circumstances.

**{¶35}** Even when the evidence is viewed in a light most favorable to Carter, none of the evidence demonstrates that Gerbec and S&C acted, or intended to act, in furtherance or promotion of CBH Realty's business. Accordingly, there is no genuine issue of material fact as to whether Gerbec's alleged tortious conduct was committed within the scope of Gerbec's agency relationship with CBH Realty. Absent a genuine issue of material fact, reasonable minds can only conclude that CBH Realty is not vicariously liable for the alleged actions of Gerbec and S&C. Carter's first assignment of error is overruled on this basis.

Assignment of Error Number Two

THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION TO RECONSIDER.

{¶36} In her second assignment of error, Carter argues that the trial court erred in denying Carter's motion for reconsideration of the summary judgment award to CBH Realty. We disagree.

{¶37} CBH Realty filed the motion for summary judgment on January 10, 2014, and Carter opposed that motion. The trial court granted the motion on March 20, 2014. Carter settled her claims with all of the other defendants during a mediation in April, 2014. However, Carter failed to submit a dismissal entry to the trial court, and the court did not enter a final judgment. Thus, claims against parties other than CBH Realty remained outstanding such that the order granting summary judgment to CBH Realty was not yet a final appealable order when Carter filed a motion to reconsider on November 20, 2014. *See D.I.C.E., Inc. v. State Farm Ins. Co.*, 6th Dist. Lucas No. L-11-1006, 2012-Ohio-1563, ¶ 53. Thus, the trial court was within its discretion to reconsider its decision. *Id.*

{¶38} In the trial court, Gerbec opposed the motion for reconsideration on the grounds that, inter alia, the motion was based on improper evidence under Civ.R. 56(C), including inadmissible hearsay. The trial court ultimately denied the motion for reconsideration, stating that Carter "failed to provide any evidence that could be used to reconsider this [m]otion for [s]ummary [j]udgment."

{¶39} When, as here, the trial court decides to reconsider a previous interlocutory order, the "'appellate court must apply the standard of review applicable to the merits of the motion being reconsidered.'" *Hull v. Astro Shapes, Inc.*, 7th Dist. Mahoning No. 10 MA 26, 2011-Ohio-1656, ¶ 28, quoting *Klocinski v. American States Ins. Co.*, 6th Dist. Lucas No. L-03-1353, 2004-

Ohio-6657, ¶ 12. We review a reconsideration of a grant of summary judgment under a de novo standard of review. *See D.I.C.E., Inc.* at ¶ 55, citing *Dunn v. N. Star Resources, Inc.*, 8th Dist. Cuyahoga No. 79455, 2002-Ohio-4570, ¶ 10. In so doing, we do not give any deference to the trial court decision. *Id.* Instead, we review the record in a light most favorable to the party opposing summary judgment to determine whether summary judgment is appropriate. *Id.* Summary judgment is appropriate under Civ.R. 56 when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, citing Civ.R. 56(C).

**{¶40}** On appeal, Carter contends that the motion for reconsideration is based on new evidence confirming that CBH Realty directly benefitted from actions taken by Gerbec in relation to her management of Carter's properties. Specifically, Carter argues that Gerbec, working with another CBH Realty agent, used Carter's federal tax identification number to set up utilities for CBH Realty listed properties.

**{¶41}** In support of the claim that Gerbec fraudulently used Carter's tax identification number to benefit CBH Realty, Carter submitted the affidavit of Lolita Adair and electric bills from Ohio Edison. However, this evidence is not admissible for purposes of summary judgment.

**{¶42}** Adair claims in her affidavit that "[a]n Ohio Edison representative confirmed directly to [her]" that Carter's tax identification number was used by Gerbec to open accounts for CBH Realty listed properties. This assertion is not based on Adair's personal knowledge, but rather is a statement by an out of court declarant asserted for its truth. As such, it is hearsay. *See* Evid.R. 801(C). Hearsay is inadmissible in the summary judgment context, unless an exception

to the hearsay rule applies. *Guernsey Bank v. Milano Sports Enterprises, L.L.C.*, 10th Dist. Franklin No. 07AP-382, 2008-Ohio-2420, ¶ 59.

{¶43} Further, the Ohio Edison bills are not admissible evidence under Civ.R. 56. Civ.R. 56(C) sets forth an inclusive list of the materials that may be considered by a court when determining a motion for summary judgment. That evidence may include depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Civ.R. 56(C). "The proper procedure for introducing evidentiary matter not specifically authorized under Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E)." *Skidmore & Assoc. Co.*, *L.P.A. v. Southerland*, 89 Ohio App.3d 177, 179 (9th Dist.1993). Civ.R. 56(E) requires that a document attached to an affidavit submitted in opposition to summary judgment must be sworn, certified, or personally authenticated based on personal knowledge. The Ohio Edison bills attached to the Adair affidavit have not been authenticated in any of these ways. The bills are neither sworn nor certified. Further, Adair does not attest that she has personal knowledge of the charges in the bills, or even claim that the bills are genuine, true and accurate copies of any bills she received on behalf of Carter. Accordingly, the bills were not properly before the trial court on summary judgment. *See Emerson Family Ltd. Partnership v. Emerson Tool, L.L.C.*, 9th Dist. Summit No. 26200, 2012-Ohio-5647, ¶ 18-21; Civ.R. 56(E).

{¶44} The only evidence that Carter presented in connection with her motion for reconsideration that we have not already discussed above did not comply with Civ.R. 56(C) or Civ.R. 56(E). Because Carter failed to support her motion for reconsideration with proper evidence, the motion was properly denied. Summary judgment in favor of CBH Realty was

appropriate for this reason, and for the reasons discussed above in connection with Carter's first assignment of error. On this basis, Carter's second assignment of error is overruled.

III.

**{¶45}** Carter's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DAVID S. NICHOL, Attorney at Law, for Appellant.

TIMOTHY T. BRICK, COLLEEN A. MOUNTCASTLE and MAIA E. JERIN, Attorneys at Law, for Appellee.