BUNCH, APPELLANT, *v.* TOM ALTHAUSER REALTY, INC., ET AL.,
APPELLEES.

[Cite as Bunch v. Tom Althauser Realty, Inc. (1977),
55 Ohio App. 2d 123.]

(No. 77AP-368—Decided October 6, 1977.)

*Messrs. Weiner, Lippe & Cromley Co., L. P. A.,* for
appellant.
*Messrs. Bailey, Houfek & Hoover,* for appellees.

McCORMAC, J. Appellant commenced an action against
Tom Althauser Realty, Inc., a real estate broker, and Hal
Barnes, a real estate saleman, alleging that he paid them
$7,500 as a deposit on the purchase of real estate and that
they failed to return his deposit when the real estate trans-
action was not completed due to no breach of contract on
his part. Althauser Realty, Inc., answered denying all the
essential allegations of the complaint. Service was not
obtained upon Hal Barnes.

The case proceeded to trial before the court who found
for defendant. From the judgment of the trial court, plain-
tiff has appealed, setting forth the following assignment
of error:

"The verdict finding for the defendant-appellee was against the manifest weight of the evidence and contrary to law."

The trial court's decision rendered in this case is related below.

### Trial Court's Opinion

"The plaintiff's action is for the return of a $7500 deposit he paid to a real estate salesman of the defendant broker on a contract for the purchase of real estate at 5785 Annarue Court, Westerville, Ohio and furniture located at 223 Patti Drive, Westerville. The purchase was not consummated. Plaintiff was informed by the salesman he could not arrange suitable financing which was a condition of the contract and the salesman came to plaintiff's home to refund the $7500 deposit. The refund was made in the form of a worthless personal check and the salesman has disappeared.

"The plaintiff, himself a licensed real estate salesman who was actively engaged in the sale of lots for Apple Valley and Hideway Hills developments for more than one year, is now in the retail clothing business. In May, 1975 he was in the market for a new home, saw an attractive place in Westerville and called the number shown on defendant's For Sale sign which posted in front of the house.

"Plaintiff was connected by telephone with Hal Barnes, the salesman, who arranged to show the house to plaintiff. Plaintiff made an offer of $45,500 but the salesman indicated such offer was not acceptable. To get the offer up to the asking price the salesman agreed to include in the sale the salesman's own furniture which was located at his home, 223 Patti Drive. Plaintiff looked at the furniture, agreed to buy the house for $48,900 plus $1000 for a heat pump, the price to include furniture located at 223 Patti Drive and itemized on a list attached to the real estate purchase contract which was prepared on one of plaintiff's forms. The furniture listed included complete furnishings for eight rooms, refrigerator, freezer, assorted kitchen appliances plus a freezer, dehumidifer, washer and dryer for the basement. Drapes and curtains throughout

the house at 223 Patti Drive and decorations such as pictures, figurines, etc., also were included.

"Plaintiff agreed to pay $7500 as a deposit upon the insistence of the salesman that a mortgage for 85 percent of the selling price might be available but that a 90 percent loan would not be likely. Plaintiff tendered his personal check dated May 17, 1975 for $7500 payable to Hal Barnes and Tom Althauser Realty, Inc., drawn on City National Bank and marked 'Deposit on 5785 Annarue Court.' Barnes indicated it would have to be certified or a cashier's check would be needed whereupon plaintiff produced a $5000 cashier's check of City National Bank numbered ST 29430, dated May 15, 1975 and payable to plaintiff William Bunch plus $2500 in cash which plaintiff intended to deposit to cover his personal check. The $5000 cashier's check was endorsed by plaintiff without restriction and was given to Barnes together with the $2500 in cash in return for endorsement by Barnes of plaintiff's $7500 check. The endorsement on plaintiff's $7500 check is simply: 'Hal Barnes, Tom Althauser Realty, Inc.' The endorsements on the $5000 cashier's check read: 'William Bunch, Hal Barnes.' It was negotiated at the City National Bank and Trust Company upon which it was drawn.

"The contract includes the following inside a ruled block toward the bottom: 'The broker hereby acknowledges receipt of said deposit of $7500 and hereby agrees to submit said offer to the Seller promptly. By Hal Barnes.'

"There are several references to the Broker in the contract which starts out: 'The undersigned Buyer hereby agrees to buy, through you as Broker.' There is a reference to the deposit made with the Broker and that the Broker agrees to hold it in trust and disburse it in accordance with certain terms of the contract. Provisions are made for payment of the Broker's commission. Nowhere is the Broker named. The name of Tom Althauser Realty, Inc. is printed at the top of the real estate purchase contract form and the logo of Tom Althauser Realty, Inc. is shaded in the background of about one-half the printed form.

"In the block toward the lower left side of the form for the broker's acknowledgement of the deposit there is space for the broker's name to be typed or written but the signature of Hal Barnes is the only name appearing.

"The purported acceptance and signature of the seller appears on the subject contract as follows: 'The undersigned hereby agrees to and accepts the foregoing proposition; and hereby acknowledges receipt of a copy hereof. The Seller further agrees to pay to the Broker, the Broker's regular commission of $     , on all property involved in this transaction, with the understanding, however, that if the Buyer fails, neglects or refuses to perform the Buyer's part of this contract the Seller's liability for a commission shall not exceed the amount of the deposit above referred to. Signed this 17th day of May, 1975, Hal Barnes for Loveless Homes, Seller.'

"The defendant broker had no personal knowledge of the transaction or of the contract until August, 1975 when plaintiff called and told defendant what had transpired. By that time Hal Barnes had issued his personal check No. 131 dated July 17, 1975 drawn upon First State Bank, Columbus, Ohio, payable to plaintiff in the amount of $7500 marked 'Deposit return for 5875 Annarue Court'. This check had been returned unhonored and marked: 'account closed'.

"Hal Barnes was employed by defendant broker under the terms of a contract dated April 15, 1975. This contract does not grant to the salesman authority to endorse checks made payable to the broker or to sign contracts for sale of property listed with the broker.

"The employment contract provides in part:

" '14. It is understood that, during the existence of this contract, Broker shall have the right to instruct Salesman as to the services he is to perform but shall not have the right to instruct Salesman as to the manner in which they are to be performed, and that the relationship of Salesman to Broker is that of an independent contractor, but not as an employee.'

"The defendant broker uses a Policy and Procedure Manual which he reviewed word for word with the sales-

man at the time of employment. This manual has a section on Earnest money which reads in pertinent part:

" 'As a general rule, earnest money should be 5% of the sale price. Experience has shown that more often than not this amount is unobtainable, however, and judgment must be exercised by the agent.'

"Did plaintiff have a right to believe he was making a deposit of $7500 with the defendant, a licensed, bonded, real estate broker, and that the money would be held in escrow pending closing? Or was he on notice that the salesman with whom he was negotiating was exceeding his authority, had a personal interest in the contract, was dealing for himself and that the money deposited was going into the salesman's pocket?

"As a general rule, where a payment is properly made to a known agent acting within the scope of his authority for a disclosed principal, without mistake, fraud or duress, and the payer ultimately becomes entitled to the return of the payment, his action is against the principal, even though the agent has not made payment to the principal.

"Here, the real estate salesman included in the sales contract a very substantial quantity of the salesman's own personal property to be conveyed to plaintiff. The salesman executed the contract purportedly for the seller, Loveless Homes. The salesman, on the contract, acknowledged the down payment individually and not in his representative capacity. The salesman only, in the presence of plaintiff, endorsed plaintiff's check for the down payment which was made jointly to the salesman and to defendant broker. The salesman signed defendant broker's name on the back of plaintiff's check but did not show he signed it in a representative capacity. Funds for the amount of this check were then given by plaintiff to the salesman. These circumstances were so unusual that any reasonably prudent person would be on notice that further inquiry was necessary to determine what authority the salesman had from the broker and the owner of the real property.

"It is the settled law of this state that a real estate agent is without authority to execute a contract of sale which

shall be binding on one who places real estate in his hands for sale unless such authority is specially conferred. *Morr* v. *Crouch* (1969), 19 Ohio St. 2d 24. A prospective purchaser is presumed to know such is the law.

"Plaintiff had no right to rely on the endorsement on his check by the salesman as binding upon the defendant since the salesman did not purport to sign it for defendant in a representative capacity.

"A real estate broker is bound by the acts of his salesman in excess of or in abuse of his actual authority only as to third persons who believed and had a right to believe that the salesman was acting within and not exceeding his authority.

"Judgment for defendant. Costs taxes to plaintiff.'"

### Discussion

Thus, Hal Barnes, admittedly a real estate salesman working for a broker, Tom Althauser Realty, Inc., accepted a $7,500 deposit in conjunction with the sale of real estate listed by the broker. The trial court found that $7,500 was paid to Barnes for this purpose and accepted by Barnes on behalf of the broker. The question is whether the unusual circumstances, such as the inclusion of some of Barnes personal property in the deal, or the fact that Barnes exceeded the authority given him by the broker, in some way discharges the broker of the responsibility of accounting for the $7,500 accepted by his salesman on his behalf, but not turned over to the broker.

The trial court analyzed the case strictly on common law agency principles and excused the broker on the basis that the purchaser was put on notice that the salesman may have been exceeding his authority and that further inquiry from the broker would have disclosed the salesman's actual authority.

While the principles of law set forth by the trial court are ordinarily valid common law principles, they do not apply to this situation. R. C. 4735.21 provides, as pertinent, as follows:

"No real estate salesman shall collect any money in connection with any real estate brokerage transaction, whether as a commission, deposit, payment, rental, or

otherwise, except in the name of and with the consent of the licensed real estate broker under whom he is licensed. * * *,,

The question is whether the intent of this statute is to make the collection of the deposit a transaction of the broker irrespective of whether the broker has actually authorized the salesman to collect the money, thus altering the common law liability of a principle for the unauthorized acts of his agent. We find that R. C. 4735.21 makes the real estate salesman the agent of the licensed real estate broker for whom he is working as a matter of law when commissions are collected by the salesman in the name of the broker. Barnes had authority to collect deposits in the name of Tom Althauser Realty, Inc. The deposit was collected in the name of and on the contract form of his broker for the sale of property listed by the broker. A broker cannot limit or place conditions upon his consent for a salesman to collect commissions in his name so that the burden is placed upon a purchaser to ascertain the actual authority that the salesman has from the broker to accept commissions.

The case does not turn on whether Barnes violated instructions given him by the broker in regard to handling deposits nor whether Barnes was an independent contractor rather than an employee of Althauser for other purposes. Thus, the issue of whether plaintiff as a prudent man ought to have inquired further to determine the actual authority of Barnes was immaterial. The broker is responsible for the return of $7,500 deposit collected by his salesman in his name, even though the broker has never received the deposit because of the criminal act of the salesman.

## Decision

Appellant's assignment of error is sustained. The judgment of the trial court is reversed. The case is remanded to the trial court for further procedure consistent with this decision.

*Judgment reversed.*

WHITESIDE and REILLY, JJ., concur.