[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Auer v. Paliath,* Slip Opinion No. 2014-Ohio-3632.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3632

AUER, APPELLEE, ET AL., *v.* PALIATH ET AL.; KELLER WILLIAMS

HOME TOWN REALTY, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Auer v. Paliath,* Slip Opinion No. 2014-Ohio-3632.]

*Real estate—Sales—Fraud by real-estate agent—Vicarious liability of broker— Jury must be instructed to find that agent acted within scope of agency before vicarious liability can be imposed.*

(No. 2013-0459—Submitted February 4, 2014—Decided August 28, 2014.)

APPEAL from the Court of Appeals for Montgomery County, No. 25158, 2013-Ohio-391.

_____

FRENCH, J.

{¶ 1}  This case concerns the vicarious liability of appellant, real-estate broker Keller Williams Home Town Realty ("Home Town"), for the tortious conduct of its former real-estate agent, Jamie Paliath.  We affirm a long line of precedent in holding that in order to impose vicarious liability, a jury first has to make a factual determination that the agent was acting within the scope of her

agency when she committed the torts at issue. Because the court of appeals in this case erroneously concluded that scope of agency was a matter of law and therefore outside the province of the jury, we must reverse.

*Background*

{¶ 2} In 2006, Paliath began working for Home Town as a licensed real-estate salesperson. Paliath's contract with Home Town specified that she would "assist clients * * * with the purchase and sale of real estate." Paliath was free to "choose * * * her own target clients, marketing techniques and sales methods." The contract also specified that Paliath had to pay Home Town 30 percent of the commissions she earned on real-estate transactions.

{¶ 3} Appellee, Torri Auer, a California resident, became acquainted with Paliath in September 2007 through the Internet website Bid4Assets.com. Auer was interested in purchasing investment properties in Dayton, Ohio, and Paliath had listed several such properties online. Auer contacted Paliath and arranged to come to Dayton to look at some of the properties. During the visit, Paliath informed Auer that she also owned a property-rehabilitation business and a property-management business. Paliath suggested that the two women start rehabbing properties together; if Auer could provide the funds, Paliath would renovate, manage, and sell the properties.

{¶ 4} Between October and December 2007, Paliath assisted Auer in purchasing five separate properties. Home Town received a commission on each of these sales.

{¶ 5} Auer hired Paliath's personal companies to rehab and manage rents on the properties. Auer soon discovered, however, that although she had paid Paliath considerable sums to renovate the buildings, Paliath had actually done very little work. When Auer visited Dayton in 2008 to inspect her properties, she found them to be uninhabitable and still in need of considerable repair. The business relationship soon began to sour.

**{¶ 6}** All told, Auer invested over $430,000 in the properties. As of 2012, the properties had no value and were scheduled for destruction.

**{¶ 7}** Auer filed suit against Paliath and Home Town, seeking to recover the amounts she had invested. Auer alleged, among other things, that Paliath had fraudulently induced her to purchase the properties by misrepresenting their worth and their capacity to generate rental income.

**{¶ 8}** Auer's claims against Home Town initially sounded in direct liability; the complaint alleged that Home Town had failed to supervise Paliath properly. But at trial, Auer abandoned any direct-liability claim and pursued her case against Home Town solely on the basis of respondeat superior liability. At the close of trial, the jury was instructed to consider only whether Home Town was vicariously liable for Paliath's fraud, rather than whether Home Town was liable for any of its own independent actions.

**{¶ 9}** The jury returned verdicts against Paliath and Home Town. It found that Paliath had fraudulently induced Auer to purchase three of the five parcels of property in Dayton and that Home Town was vicariously liable for Paliath's fraud. The jury awarded Auer $135,200 in damages for this fraudulent inducement.

**{¶ 10}** Home Town appealed, arguing in part that the trial court failed to properly instruct the jury on scope of agency as it related to Home Town's vicarious liability. *Auer v. Paliath*, 2013-Ohio-391, 986 N.E.2d 1052, ¶ 20, 38 (2d Dist.). The court of appeals determined that any such error was harmless, because scope of agency was a matter of law that the jury did not need to address. *Id.* at ¶ 46-52.

**{¶ 11}** We accepted review over Home Town's discretionary appeal. *Auer v. Paliath*, 135 Ohio St.3d 1458, 2013-Ohio-2285, 988 N.E.2d 578. For the reasons that follow, we reverse.

*Analysis*

### A. The Jury Instructions

{¶ 12} "A trial court must give jury instructions that correctly and completely state the law." *Groob v. Keybank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 32. "An inadequate jury instruction that misleads the jury constitutes reversible error." *Id.*

{¶ 13} In this case, the jury had to determine whether Home Town was vicariously liable for Paliath's fraud, based on a theory of respondeat superior. The respondeat superior doctrine makes an employer or principal vicariously liable for the torts of its employees or agents. *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994). But "in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment." *Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991).

{¶ 14} The trial court did not instruct the jury in accordance with this precedent. Instead, the trial court instructed the jury as follows:

> A real estate broker is vicariously liable for intentional torts committed by a salesman acting within the scope of their authority. A salesman is required to work under the supervision of a licensed broker and [in] all of her activities relating to real estate transactions.
>
> Vicarious liability means that the broker, in this case, Defendant Keller Williams Hometown Realty of Vandalia, is bound by action taken on its behalf by a realtor, in this case Defendant Paliath, while acting within the scope of her authority. A real estate agent is not within the scope of her agency when she

clearly and completely departs from the services or jobs that she was hired to do.

When an agent acts solely for her own benefit or solely for the benefit of a person other than her broker, she does not act within the scope of her agency and the broker is not liable for the agent's act.

If you find that Defendant Jamie Paliath committed fraud with respect to the sale of [properties] to Plaintiff Torri Auer, then Defendant Keller Williams Hometown Realty of Vandalia is vicariously liable and you must find in favor of Plaintiff Torri Auer and against Defendant Keller Williams Hometown Realty of Vandalia * * * .

{¶ 15} Although the trial court began by appropriately describing scope of agency, it then issued an instruction that made scope of agency irrelevant. The court told the jury, "If you find that Defendant Jamie Paliath committed fraud * * *, then Defendant Keller Williams Hometown Realty of Vandalia is vicariously liable * * *." That instruction is incomplete. It does not inform the jury that in order to impose vicarious liability on Home Town, the jury first had to find that Paliath was acting within the scope of her agency when she committed the fraud. *Groob*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, at ¶ 42, citing *Byrd*, 57 Ohio St.3d at 58, 565 N.E.2d 584. Rather, the instruction forces the jury to impose liability on Home Town without considering scope of agency at all.

{¶ 16} In fact, the jury expressed confusion on this very point. During deliberations, the foreman submitted a question to the trial judge, asking if the jurors were required to find against Home Town if they found against Paliath.

The trial court responded by referring the jurors back to the erroneous jury instructions.

{¶ 17} To be correct, the jury instruction should have stated, "If you find that Defendant Jamie Paliath committed fraud, *and if you find that Paliath committed this fraud within the scope of her agency*, then Home Town is vicariously liable." Because the trial court omitted the italicized language, its instruction was incomplete and incorrect. A principal is not vicariously liable unless its agent acted within the scope of her agency when committing a tort. *Id.*

{¶ 18} Although the court of appeals recognized that the instruction was likely erroneous, it nevertheless affirmed the jury verdict. The court reasoned that any error in the instruction was harmless because the jury never needed to make a scope-of-agency determination in the first place. According to the court, R.C. 4735.21 already establishes scope of agency for real-estate brokers as a matter of law.

{¶ 19} R.C. 4735.21 provides that "[n]o real estate salesperson * * * shall collect any money in connection with any real estate * * * transaction, * * * except in the name of and with the consent of the licensed real estate broker * * *." Looking to this language, the court of appeals concluded:

> Under R.C. 4735.21, a real estate salesperson cannot complete a real estate transaction outside of his or her association with a licensed real estate broker. As a result, when a real estate salesperson acts in the name of a real estate broker in connection with the type of real estate transaction for which he or she was hired and the broker collects a commission for the transaction, the salesperson's actions in connection with that real estate transaction are within the scope of the salesperson's employment, as a matter of law.

2013-Ohio-391, 986 N.E.2d 1052, at ¶ 46. Here, because Paliath worked as a real-estate salesperson for Home Town, assisted Auer in purchasing properties, and gave Home Town commissions from the sales, the court held that she was working within the scope of her agency as a matter of law when she committed her fraud.

{¶ 20} In essence, the court of appeals' decision holds that a broker is always liable as a matter of law for the tortious conduct of rogue agents whenever the broker receives a portion of the agent's sales commission. We cannot endorse this bright-line rule. The fact that a broker eventually received a commission from an agent's sale does not mean that every action the agent took prior to the sale was within the agent's scope of authority as a matter of law. "[W]hether an employee is acting within the scope of his employment is a question of fact to be decided by the jury." *Osborne v. Lyles*, 63 Ohio St.3d 326, 330, 587 N.E.2d 825 (1992), citing *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 344 N.E.2d 334 (1976); *see also Posin* at 278 ("The term 'scope of employment' * * * cannot be defined because it is a question of fact and each case is sui generis"). The scope-of-agency determination necessarily turns upon a multitude of considerations and fact-specific inquiries that R.C. 4735.21 does not address.

{¶ 21} First, the agent's tortious acts must have been "an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it." *Posin* at 278, citing *Tarlecka v. Morgan*, 125 Ohio St. 319, 181 N.E. 450 (1932). It is not enough that the agent's position within the principal's business simply aided her in committing the tort. *Groob*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, at ¶ 58.

{¶ 22} Most importantly, in cases "where the tort is intentional, * * * the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed * * *.' " *Byrd*, 57 Ohio St.3d at 58,

565 N.E.2d 584, quoting *Little Miami RR. Co. v. Wetmore*, 19 Ohio St. 110, 132 (1869). Therefore, "the determination of whether conduct is within the scope of employment or outside the scope of employment necessarily turns on the fact-finder's perception of whether the [employee] acted, or believed himself to have acted, at least in part, in his employer's interests." *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 17; *see also* Restatement of the Law 3d, Agency, Section 7.07(2) (2006) (employee's act is outside scope of employment "when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer"). The agent's motivations and the self-interested nature of her actions are therefore necessary considerations in a scope-of-agency inquiry. *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, ¶ 28 ("if an employee's actions are self-serving or have no relationship to the employer's business, then the conduct is 'manifestly outside the scope of employment' * * *"); *Posin* at 278 ("A servant who departs from his employment to engage in affairs of his own relieves the master from liabilities for his acts").

{¶ 23} Here, the jury found that Paliath fraudulently induced Auer to purchase several properties. In order to find Home Town vicariously liable for this fraud, the jury would have to find that Paliath committed the fraud, at least in part, with the intent to facilitate or promote Home Town's business. *Groob* at ¶ 43; *Byrd* at 58. This finding is neither a question of law nor a question that R.C. 4735.21 can answer; R.C. 4735.21 does not tell us what Paliath's intentions were when she committed her tort. The jury could find, as Home Town argues, that Paliath's actions were calculated to facilitate Paliath's own businesses, rather than Home Town's brokerage business. Whether the facts support Home Town's argument is not an issue before this court. It is an issue for the factfinder to resolve.

**{¶ 24}** The court of appeals' reliance on R.C. 4735.21 was also misplaced in another respect. R.C. 4735.21 speaks only to one specific act of a real-estate agent: the *collection of money* in connection with a real-estate transaction. Yet the court of appeals concluded that R.C. 4735.21 puts *any act* "in connection with" a real-estate transaction within the scope of a salesperson's agency. R.C. 4735.21 simply does not reach that far. It does not speak to the entire universe of actions a salesperson may undertake "in connection with" a sale. The question whether these actions are within the agency relationship is a factual one that the jury must answer, based on the factors delineated in our case law.

**{¶ 25}** To reach its contrary conclusion, the court of appeals relied on *Bunch v. Tom Althauser Realty, Inc.*, 55 Ohio App.2d 123, 379 N.E.2d 613 (10th Dist.1977). *Bunch*, however, dealt solely with a real-estate salesman's actual collection of, and refusal to return, a purchaser's deposit. The *Bunch* court held that "R.C. 4735.21 makes the real estate salesman the agent of the licensed real-estate broker for whom he is working as a matter of law when commissions are collected by the salesman in the name of the broker." *Id.* at 129. This holding states only that the act of collecting the deposit falls within the scope of the salesperson's authority. *Id.* ("The question is whether the intent of [R.C. 4735.21] is to make *the collection of the deposit* a transaction of the broker * * *"). (Emphasis added.) Here, the court of appeals read *Bunch* as suggesting that whenever a salesperson collects a commission for her broker, everything the salesperson did *prior* to that act of collection also falls within the scope of the salesperson's agency. Neither *Bunch* nor R.C. 4735.21 expands the scope of a real-estate salesperson's agency so generously.

### B. Auer's Failure-to-Supervise Argument

**{¶ 26}** Even Auer herself does not ask us to support the court of appeals' bright-line liability rule. During oral argument, this court asked Auer's counsel

whether we should adopt the court of appeals' ruling that a broker is always liable as a matter of law for the actions of a rogue agent. He said no.

{¶ 27} Instead, Auer asks this court to affirm on the grounds that "the facts in this case were so egregious" and "the lack of supervision was so apparent." This was a theme that ran throughout Auer's briefing and oral argument; Auer repeatedly asked this court to find Home Town liable because Home Town failed to supervise Paliath. These assertions, however, no matter how true, are beside the point. The only claim against Home Town was for vicarious liability. Vicarious liability by its very terms attaches to the principal through the agent's actions, not through the principal's own actions. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 20-22. Home Town's direct conduct is irrelevant to a vicarious-liability cause of action. And because the jury was not properly instructed on how to find vicarious liability, we cannot affirm the judgment against Home Town.

### *Conclusion*

{¶ 28} Home Town's vicarious liability depended on whether Paliath's tortious actions lay within the scope of Paliath's agency. That determination was an issue of fact for the jury to decide. Because the trial court's instructions precluded the jury from making this scope-of-agency determination, the instructions were erroneous and constituted reversible error. Accordingly, we vacate the jury verdict and remand this case to the trial court for further proceedings on the issue of Home Town's liability.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 29} I agree with the majority that the jury instructions could have been better worded, and I agree that the instruction suggested by the majority is better than that which was given to the jury. No one sentence of a jury instruction, however, stands alone—even though that is what the majority appears to believe—and no civil defendant is entitled to a perfect trial, *see Moretz v. Muakkassa*, 137 Ohio St.3d 171, 2013-Ohio-4656, 998 N.E.2d 479, ¶ 125 (Pfeifer, J., dissenting).

{¶ 30} The majority opinion states, "[T]he jury instruction should have stated, 'If you find that Defendant Jamie Paliath committed fraud, *and if you find that Paliath committed this fraud within the scope of her agency*, then Home Town is vicariously liable.' " (Emphasis sic.) Majority opinion at ¶ 17. The majority concludes that because the italicized language was omitted, the instruction was incorrect because "[a] principal is not vicariously liable unless its agent acted within the scope of her agency when committing a tort." Majority opinion at ¶ 17. That last principle is unassailably true—and was well explained in plain language in the three previous sentences of the jury instruction.

{¶ 31} Three sentences before the imperfect sentence in the jury instructions, the trial court stated, "Vicarious liability means that the broker * * * is bound by action taken on its behalf by a realtor * * * while acting within the scope of her authority." Two sentences before the imperfect sentence, the trial court stated, "A real estate agent is not within the scope of her agency when she clearly and completely departs from the services or jobs that she was hired to do." One sentence before the imperfect sentence, the trial court stated, "When an agent acts solely for her own benefit or solely for the benefit of a person other than her broker, she does not act within the scope of her agency and the broker is not liable for the agent's act."

**{¶ 32}** Although the imperfect sentence could have been better worded, that sentence does not exist in a vacuum. The three sentences immediately preceding it contained the plain-language definition—that vicarious liability does not attach unless the agent was acting within the scope of employment—that the majority opinion claims is lacking in the instructions.

**{¶ 33}** I have the utmost respect for the juries in this state. I do not assume, as the majority opinion does, that this jury focused exclusively on one sentence that could have been better worded. Instead, I assume that the jury read the entirety of the jury instructions, including the three sentences immediately preceding the less than perfect sentence. When read in pari materia, the jury instructions plainly state that vicarious liability attaches only when the agent is acting within the scope of his or her employment.

**{¶ 34}** This court is remanding the case for a new trial at which the parties will present the same evidence and the judge will issue the same instructions, with one small unnecessary if helpful addition. So much for judicial economy.

**{¶ 35}** I would affirm the court of appeals. I dissent.

O'NEILL, J., concurs in the foregoing opinion.

_____

Lasky & Scharrer and Laurence A. Lasky; and Gregg Law Office and Stephen D. Gregg, for appellee.

Pyper & Nordstrom, L.L.C., and Thomas H. Pyper, for appellant.

Baker Hostetler, John H. Burtch, and Robert J. Tucker, urging reversal for amicus curiae Ohio Association of Realtors.

Ralph W. Holmen and Katherine R. Johnson, urging reversal for amicus curiae National Association of Realtors.

_____