[Cite as *Mitchell v. Worley*, 2022-Ohio-4222.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

BUDDY MITCHELL

    Appellant

    v.

TRAVIS WORLEY, et al.

    Appellees

C.A. No.      21CA0063-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    20CIV0627

DECISION AND JOURNAL ENTRY

Dated: November 28, 2022

CARR, Judge.

**{¶1}** Appellant, Buddy Mitchell, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms in part and reverses in part and remands for further proceedings.

I.

**{¶2}** This case arises out of an incident that occurred in Wadsworth on the morning of March 15, 2018. At approximately 6:30 a.m., Travis Worley was driving his pickup truck to a jobsite in Seville. As Worley made a left turn onto Interstate 76, he struck Mitchell with his vehicle. Mitchell sustained serious injuries as a result of the accident. At the time of the accident Worley was working for the Michels Corporation ("Michels Corp."), a utility and infrastructure construction company. Michels Corp. had contracted to build a compressor station for a natural gas pipeline at a site in Seville.

{¶3} Mitchell filed a complaint alleging claims of negligence and respondeat superior against Worley and Michels Corp. Worley and Michels Corp. filed separate answers wherein they generally denied the allegations in the complaint and set forth a number of affirmative defenses.

{¶4} Michels Corp. filed a motion for summary judgment arguing that Worley was not acting within the course of his employment at the time of the accident. Mitchell filed a response in opposition to the motion as well a cross-motion for summary judgment.

{¶5} The trial court ultimately granted summary judgment in favor of Michels Corp. on the basis that Worley was not acting in the course of his employment at the time of the accident. The trial court also denied Mitchell's cross-motion for summary judgment.[1]

{¶6} On appeal, Mitchell raises four assignments of error. This Court consolidates certain assignments of error to facilitate review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF MICHELS CORPORATION UNDER THE "COMING AND GOING" RULE WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO WHETHER MICHELS CORPORATION RECEIVED A "SPECIAL BENEFIT" AS A RESULT OF WORLEY'S PRESENCE IN OHIO.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN APPLYING THE "SPECIAL HAZARD" EXCEPTION TO THE "COMING AND GOING" RULE WHEN THE "SPECIAL HAZARD" EXCEPTION APPLIES ONLY IN WORKER[S'] COMPENSATION CASES[.]

---

[1] After initially issuing an order that did not include Civ.R. 54(B) language, the trial court subsequently issued a summary judgment order determining that there was no just cause for delay pursuant to Civ.R. 54(B).

{¶7}   In his first assignment of error, Mitchell contends that the trial court erred in granting summary judgment in favor of Michels Corp. pursuant to the coming and going rule because there was a question of material fact as to whether Michels Corp. received a special benefit as a result of Worley's presence in Ohio.  In his third assignment of error, Mitchell contends that the trial court misapplied the "special hazard" exception to the coming and going rule.

{¶8}   This Court reviews an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.  *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶9}   Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶10}   The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).  Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C).  *Id.*  Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings.  Rather, the non-moving party has a reciprocal burden of responding by setting forth

specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

**Background**

{¶11} Sean Nicholson gave deposition testimony on behalf of Michels Corp. in his capacity as Vice President of Health, Safety, and Environment. Nicholson explained that there were roughly 200 employees at the jobsite in Seville. Michels Corp. is a union contractor. Pursuant to the various collective bargaining agreements to which Michels Corp. is a party, Michels Corp. is permitted to bring 50 percent of the necessary employees to a project. This "core group" of employees are union members who can be selected from anywhere in the country. The core group of employees allows Michels Corp. to uphold standards of quality, consistency, and safety at a project, in addition to maintaining its desired culture. Nicholson explained, "Once we have our 50 percent, if the local unions and local trades are able to provide the remaining 50 percent of the manpower needed, then they will provide that staff. And that's done so that the individuals in the communities and the areas where we're building and working * * * benefit from the project."

{¶12} Nicholson explained that Worley was part of Michels Corp.'s core group at the Seville jobsite. Michels Corp. brought Worley to the project because he had worked on previous projects and had established himself as a safe and reliable employee. Worley was required to arrive in Ohio in time to sign up for the project, pass a drug test, and go through training. Worley was also required to show up for work on time every day. Michels Corp. did not place any restrictions on Worley with respect to how he traveled to Ohio, where he stayed while he was in Ohio, or how got to and from the jobsite on a daily basis. Nicholson indicated that pursuant to the agreement between Michels Corp. and the union, Worley was paid a weekly per diem because he did not reside within 50 miles of the jobsite. There were no restrictions on how Worley spent the

per diem. The purpose of the per diem was to compensate employees for the cost of living once on a project, not for expenses associated with traveling to the project.

{¶13} Nicholson indicated that Michels Corp. did not undertake an investigation regarding Worley's accident on March 15, 2018. While Nicholson did not have direct knowledge of how Michels Corp. became aware of the accident, he noted that Worley would not have been required to submit any paperwork to Michels Corp. unless the accident involved a company vehicle.

{¶14} Worley lives in Steelville, Missouri with his wife and children and he works out of a union hall as a pipeline laborer. The union hall has an agreement with Michels Corp. Worley testified at his deposition that he first worked for Michels Corp. in 2015. The Seville project was Worley's fourth stint with Michels Corp. but he noted that he worked for a different company in 2019. [2] Worley has never been able to commute from his home in Missouri while working for Michels Corp. because all of the jobsites were out of state.

{¶15} Worley successfully applied to work at the Seville jobsite 2017. A supervisor asked him to apply for the project. When asked why Michels Corp. wanted him, Worley responded, "[p]robably because they knew me." Worley explained that he took the job "[b]ecause there [was] no money at home and [he] was looking for a job that pa[id] good enough to feed the family." Worley took the job with the understanding that he would be in Ohio for as long as it took for the job to be completed. Worley drove to Ohio around Thanksgiving in 2017

---

[2] At the time of his deposition, Worley was working for Michels Corp. at a jobsite in Minnesota.

and stayed until December 2018. Worley only came home to visit family twice during that period. Worley worked exclusively at the 75-acre jobsite in Seville during his stint in Ohio. Worley testified that he was responsible for getting to and from the jobsite each day and setting up his own lodging. While Michels Corp. did not pay for Worley's travel expenses, he received a weekly per diem of $235. Worley explained that the entirety of the per diem went toward food and lodging. Worley stayed at a hotel that was a 15-minute drive from the jobsite.[3] Worley indicated at his deposition that he did not have any work responsibilities until he arrived at the jobsite.

{¶16} There were 15 employees at the jobsite who had the same duties at Worley, all of whom were from Ohio. Most of them resided in the Akron area and worked out of an Ohio union hall. Worley was not assigned a company truck and he drove his own pickup truck to and from the jobsite each day. Worley recalled that all of the other employees had their own vehicles. Worley did not use his personal truck on the jobsite.

{¶17} On the morning of March 15, 2018, Worley woke up at 5:30 a.m. and left for the jobsite soon thereafter. At approximately 6:30 a.m., as Worley made a left turn onto Interstate 76, he struck Buddy Mitchell with his truck. Worley did not see Mitchell prior to the collision, and it was his impression that Mitchell stepped out in front of his vehicle. Worley notified Michels Corp. what had happened, but he did not receive any kind of guidance or feedback as to how to handle the situation.

{¶18} In granting Michels Corp.'s motion for summary judgment, the trial court determined that Mitchell was not acting within the course of his employment at the time of the

---

[3] When the weather improved, Worley moved to a trailer court and lived in a trailer that he purchased.

incident because Mitchell was a fixed situs employee commuting to work pursuant to the coming and going rule. In reaching this determination, the trial court concluded that Mitchell was not a travelling employee. The trial court further determined that the special benefit and special hazards exceptions to the coming and going rule were not applicable under the undisputed facts of this case.

### Discussion

{¶19} On appeal, Mitchell contends that the trial court misapplied the special benefit and special hazard exceptions to the coming and going rule.

{¶20} The doctrine of respondeat superior allows the employer to be held liable for the tortious acts of an employee. *Auer v. Paliath*, 140 Ohio St.3d 276, 2014-Ohio-3632, ¶ 13. "It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment." *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (1991). The question of whether an employee is acting within the scope of employment is commonly a question of fact and "[o]nly when reasonable minds can come to but one conclusion does the issue regarding scope of employment become a question of law." *Osborne v. Lyles*, 63 Ohio St.3d 326, 330 (1992).

{¶21} In the context of respondeat superior, the general rule under Ohio law is that employers are not liable for their employees' actions while commuting to work. *Kestranek v. Crosby*, 8th Dist. Cuyahoga No. 93163, 2010-Ohio-1208, ¶ 26. "[A]s a matter of law, a master is not liable for the negligence of his servant while the latter is driving to work at a fixed place of employment, where such driving involves no special benefit to the master other than the making of the servant's services available to the master at the place where they are needed." *Boch v. New York Life Ins. Co.*, 175 Ohio St. 458, 463 (1964).

**{¶22}** The coming and going rule, which originated in the context of workers' compensation cases, is based on the same principle. *Curtis v. Gulley*, 12th Dist. Fayette No. CA2006-03-013, 2006-Ohio-6081, ¶ 12. "Under the '[coming and going] rule,' an employee who has a fixed place of employment (a "fixed situs" employee), is as a matter of law not in the course of his employment * * * when traveling to or from his place of employment." *Gulley* at ¶ 12, citing *Boch* at 462.

**{¶23}** While the general rule is that merely traveling to a fixed place of employment does not constitute acting within the course of employment, one exception that exists is when the employee is providing a special benefit to the employer other than simply making the employee's services available at a fixed place of employment. *Kestranek* at ¶ 27; *Boch* at 463. A relevant consideration in determining if an employee provided a special benefit is whether the employee had a mission or task to perform for his or her employer while commuting to or from the workplace. *See Haag v. Downing*, 10th Dist. Franklin No. 76AP-865, 1977 WL 199990, *2 (Mar. 10, 1977). Furthermore, "[i]f the conduct of an employee is actuated by a purpose to serve his master, the conduct may fall within the employee's scope of employment." *Wrinkle v. Cotton*, 9th Dist. Lorain No. 03CA008401, 2004-Ohio-4335, ¶ 16, *but see id.* at ¶ 29 (Carr, P.J., dissenting).

<u>Special Benefit</u>

**{¶24}** In support of his first assignment of error, Mitchell contends that there was, at a minimum, a question of material fact as to whether Michels Corp. received a special benefit from Worley's presence in Ohio. Mitchell stresses that Michels Corp. brought Worley to the Seville jobsite because of his experience and his ability to help maintain Michels Corp.'s desired culture. Mitchell likens the circumstances of this case to the facts in *Kestranek*, where the Eighth District concluded that there was a question of fact as to whether a day laborer was acting within the scope

of his employment when he was in a car accident while transporting several co-workers to a jobsite. *See Kestranek*, 2010-Ohio-1208, at ¶ 32.

{¶25} As an initial matter, Mitchell's reliance on the holding in *Kestranek* is misplaced. In concluding that there was a question of fact as to whether the employee was in the course of employment at the time of the car accident, the Eighth District highlighted that the employee was required to stop at the employer's office prior to driving to the client's location. *Kestranek* at ¶ 32. While at the office, the employee picked up three other individuals to transport to the location, which meant that the employer did not have to transport those individuals in a company van. *Id*. The employer transferred money from the paychecks of the three other individuals to the employee in order to compensate him for driving. *Id*. The Eighth District concluded that "an inference can be made that [the employer] required [the employee] to drive the other employees." *Id*. Unlike *Kestranek*, Worley drove alone to the Seville jobsite each day, he was not required to make any stops along the way, and he did not otherwise provide a benefit to Michels Corp. during his commute. Worley simply had to make himself available for work on time.

{¶26} Furthermore, Mitchell's contention that there was a question of material fact as to whether Michels Corp. received a special benefit from Worley is without merit. The following facts are not in dispute. Worley temporarily relocated to Ohio in order to work as a union laborer for Michels Corp. at the Seville jobsite. Worley applied for the position with the understanding that he would be in Ohio until the job was completed, which ended up taking a little more than a year. Michels Corp. did not assist Worley in traveling from Missouri to Ohio. Worley received a weekly per diem to assist with living expenses, but Michels Corp. did not place any restrictions on Worley regarding where he stayed while in Ohio. Although Worley was required to show up for work on time each day, there were no restrictions on how Worley commuted to and from the

jobsite. The accident in this case occurred while Worley was making his daily commute from his hotel to the jobsite. "The law in Ohio is clear: an employer is not liable for the tortious acts of its employees on their way to and from the workplace." *Jankovsky v. Auto-Owner Ins. Co*., 3d Dist. Allen No. No. 1–04–10, 2005-Ohio-1432, ¶ 9. While Mitchell contends that Michels Corp. received a special benefit from Worley's presence in Ohio, Worley drove his personal vehicle to work each day and there was no evidence that Worley was ever asked to perform any tasks or assignments for Michels Corp. during his daily commute. Under these circumstances, the trial court did not err in concluding that the special benefit exception was not applicable as a matter of law.

{¶27} The first assignment of error is overruled.

### Special Hazard

{¶28} In his third assignment of error, Mitchell contends that the trial court erred in considering the special hazard exception to the coming and going rule because the special hazard exception is only applicable in workers' compensation cases.

{¶29} In its motion for summary judgment, Michels Corp. argued that it was entitled to judgment as a matter of law because Worley was not acting within the scope of his employment at the time of the accident pursuant to the principles of the coming and going rule. In an attempt to anticipate Mitchell's response to the motion, Michels Corp. discussed several exceptions to the coming and going rule, including the special benefit and special hazard exceptions, and argued that those exceptions were not applicable. In responding to the motion for summary judgment and filing a cross-motion for summary judgment, Mitchell did not argue that the special hazard exception to the coming and going rule was applicable in this case.

{¶30} In its order granting the motion for summary judgment in favor or Michels Corp., the trial court briefly analyzed whether the special hazard exception was applicable and ultimately concluded that it was not.

{¶31} It is well-settled that "[i]t is the appellant's duty to develop a legal argument to demonstrate reversible error by the trial court." *In re M.C.*, 9th Dist. Summit No. 22983, 2006-Ohio-1041, ¶ 25. On appeal, Mitchell essentially argues that there was no need for the trial court to analyze whether the special hazard exception was applicable because Mitchell did not attempt to rely on the special hazard during the summary judgment proceedings. Assuming arguendo that the trial court's analysis was unnecessary, Mitchell has not demonstrated that the trial court committed reversible error in this regard given that there is no basis from which to conclude that the analysis resulted in prejudice to Mitchell.

{¶32} The third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF MICHELS CORP[.] UNDER THE "COMING AND GOING" RULE WHEN THE ADMISSIBLE EVIDENCE IN THE RECORD ESTABLISHED THAT WORLEY CONSTITUTED A "TRAVELING EMPLOYEE" UNDER THE "TRAVELING EMPLOYEE" EXCEPTION TO THE "COMING AND GOING" RULE[.]

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN DENYING MR. MITCHELL'S CROSS-MOTION FOR SUMMARY JUDGMENT UNDER THE "TRAVELING EMPLOYEE" DOCTRINE WHEN MICHELS CORPORATION DID NOT OPPOSE THE MOTION AND DID NOT PRESENT ANY ADMISSIBLE EVIDENCE ESTABLISHING THAT WORLEY WAS NOT A "TRAVELING EMPLOYEE" AT THE TIME OF THE ACCIDENT[.]

{¶33} In his second assignment of error, Mitchell contends that the trial court erred in granting summary judgment to Michels Corp. because Worley was acting within the course of his

employment pursuant to the traveling employee exception to the coming and going rule. In his fourth assignment of error, Mitchell contends that the trial court should have granted his cross-motion for summary judgment because the evidence demonstrated that Worley was a travelling employee as a matter of law. In further support of his fourth assignment of error, Mitchell notes that Michels Corp. did not file a brief in opposition to the cross-motion for summary judgment.

{¶34} Mitchell's primary contention during the summary judgment proceedings below was that the traveling employee exception to the coming and going rule was applicable in this case. Mitchell asserted that Worley was not a fixed situs employee who was simply commuting to work at the time of the accident. Instead, Mitchell argued that Worley was a traveling employee because Michels Corp. recruited Worley to Ohio to work in furtherance of Michels Corp.'s contract with a customer to build a compressor station in Seville.

{¶35} In granting summary judgment in favor of Michels Corp., the trial court determined that Worley a was fixed situs employee subject to the coming and going rule. In reaching this conclusion, the trial court highlighted a number of facts regarding the nature of Worley's employment and his relocation to Ohio for the Seville project. The trial court ultimately concluded, "the facts before this Court more closely align with a finding that Mr. Worley was a fixed situs employee rather than a traveling employee. From November 2017 through December 2018, Mr. Worley travelled from his residence to the same permanent job site. Consequently, Ohio's 'coming and going' rule applies and, as a matter of law, Mr. Worley was not in the course and scope of his employment with Michels [Corp.] during his commute to the permanent job site at the time of the underlying accident."

{¶36} In *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117 (1998), the Supreme Court considered whether employees who were injured in a car accident were entitled to workers'

compensation benefits. Two members of a drilling team were injured while driving to a remote location where their employer had assigned them to drill wells. *Ruckman* at 118. The court observed that, "[a]s a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite casual connection between injury and the employment does not exist." *Ruckman* at 119, quoting *MTD Products, Inc. v. Robatin*, 61 Ohio St.3d 66, 68 (1991). "In determining whether an employee is a fixed-situs employee and therefore within the coming-and-going rule, the focus is on whether the employee commences his substantial employment duties only after arriving at a specific and identifiable work place designated by his employer." *Ruckman* at 119, citing *Indus. Comm. v. Heil*, 123 Ohio St. 604, 606-607 (1931). While an employee's commute to a fixed work site generally bears no meaningful connection to his employment for the purposes of workers' compensation, the Supreme Court recognized an exception where "the employee travels to the premises of one of his employer's customers to satisfy a business obligation." *Ruckman* at 121. In concluding that the employees were in the course of employment at the time of the accident, the Supreme Court noted that the rigging business required the employees to "set up on a customer's premises, drill a well and, after completion, disassemble the derrick for transport to the next jobsite." *Id*. Thus, the employees were engaged in the promotion and furtherance of their employer's business while traveling to the customer's premises. *Id*.

{¶37} On appeal, Mitchell suggests that the facts of this case are similar to the circumstances in *Ruckman* because Worley was traveling to the premises of Michels Corp.'s customer as a condition of his employment at the time of the accident. Mitchell points to a litany of additional workers' compensation cases in support of his assertion that the traveling employee

exception was applicable because Worley was a resident of Missouri who was present in Ohio for no other reason but to further Michels Corp.'s business interests.

{¶38} We are compelled to sustain Mitchell's second and forth assignments of error to the limited extent that the trial court failed to analyze the traveling employee issue in the first instance. As an initial matter, the trial court's summary judgment order is devoid of analysis regarding the threshold issue of whether the traveling employee exception, which arose out of workers' compensation law, is applicable in the context of respondeat superior. "Although our review is de novo, this Court is precluded from considering the motions for summary judgment in the first instance. * * * That necessarily includes an examination of the evidence within the applicable legal context." *Guappone v. Enviro-Cote, Inc.*, 9th Dist. Summit No. 24718, 2009-Ohio-5540, ¶ 11. As a court of review, we decline to undertake this analysis in the first instance.

{¶39} Furthermore, summary judgment is only appropriate when no genuine issues of material fact remain to be litigated. *See* Civ.R. 56(C). Here, the trial court resolved the issue on the basis that the facts "more closely align with a finding" that Worley was not a traveling employee. Assuming without deciding that the traveling employee exception can be applied in the respondeat superior context, the trial court's conclusion was not akin to determining that there was absence of a genuine issue of material fact. *See Tucker v. Kanzios*, 9th Dist. Lorain No. 08CA009429, 2009-Ohio-2788, ¶ 15. Under these circumstances, this matter must be remanded for the trial court to resolve these issues in the first instance.

{¶40} Mitchell's second and fourth assignments of error are sustained to the extent that the trial court must analyze in the first instance whether the traveling employee exception is applicable in this case.

III.

**{¶41}** Mitchell's first and third assignments of error are overruled. Mitchell's second and fourth assignments of error are sustained. The judgment of the Medina County Court of Common Pleas is affirmed in part and reversed in part and remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

                                   _____

                                   DONNA J. CARR
                                   FOR THE COURT

TEODOSIO, P. J.
CONCURS.

SUTTON, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶42} I respectfully dissent from the judgment of the majority to the extent it concludes that no genuine issues of material fact exist as to whether Michels Corp. received a "special benefit" as a result of Mr. Worley's presence in Ohio. As indicated by the majority, "[i]f the conduct of an employee is actuated by a purpose to serve his master, the conduct may fall within the employee's scope of employment." *Wrinkle*, 2004-Ohio-4335, ¶ 16. "Typically, the question of whether an activity is within the 'scope of employment' is an issue of fact to be decided by the jury." *Id*. at ¶ 12, quoting *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d 271, 278 (1976).

{¶43} Mr. Worley was part of a "core group" of union employees from which Michels Corp. selected from anywhere in the country to uphold the standards of quality, consistency, and safety at the project site, and to foster its desired "culture" among employees. Mr. Worley, a Missouri resident, was chosen four times by Michels Corp. to work out-of-state at its jobsites, including at this one. Notably, Mr. Worley was contacted by Craig Watson, the project superintendent at the Seville jobsite, who personally "invited" him to come to Ohio to work for Michels Corp. on the Nexus pipeline project. Mr. Worley also received an added financial benefit in the form of a weekly nontaxable per diem of $235.00 for food and lodging reimbursement from Michels Corp. Out of the 15 employees who had the same work duties, Mr. Worley was the only

one specifically invited and brought in from out-of-state to maintain the desired "culture" among employees.

{¶44} When asked if Mr. Worley brought with him any "particular skills[,]" Mr. Nicholson, the vice president of health, safety, and environment, testified Mr. Worley had "established himself as a reliable, *safe* employee * * * and, again, reliability, attention to safety – *safety is our key core value* at Michels. It's our number one core value." (Emphasis added.) Indeed, Mr. Worley only came to Seville, Ohio at the specific behest of Michels Corp. Further, Mr. Worley was required to be at the Michels Corp. jobsite every day by start-time at 7:00 a.m. In order to meet this requirement, Mr. Worley drove each day from his hotel to the jobsite in Seville, and the accident occurred enroute to the jobsite.

{¶45} Based on the deposition testimony, I believe summary judgment was inappropriately rendered due to genuine issues of material fact being in dispute regarding the "special benefit" exception to the coming and going rule.

{¶46} Accordingly, I dissent from the majority's resolution of the first assignment of error.

APPEARANCES:

MARK P. HERRON, Attorney at Law, for Appellant.

JEREMY R. BURNSIDE, Attorney at Law, for Appellant.

HOLLY MARIE WILSON and BRIANNA M. PRISLIPSKY, Attorneys at Law, for Appellee.